*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.  20-101 |
| | Docket Control No.  RHS-1 |
| THOMAS O. GILLIS: Chapter 13 | |
| Fees and Disgorgement | |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

**MEMORANDUM RE:**
**ORDER FOR HEARING, PRESENTATION OF INFORMATION AND DOCUMENTS**
**CONCERNING PENDING SUBSTITUTIONS OF ATTORNEY FILED BY**

**LATINO LAW, INC.,**
**MARK J. HANNON, dba LATINO LAW, INC.,**
**AND THOMAS O. GILLIS**
**TO REPLACE SUSPENDED ATTORNEY**
**THOMAS O. GILLIS AS ATTORNEY OF RECORD**

The court issues this Memorandum and an Order pursuant hereto in conjunction with the proceedings being jointly conducted by the Hon. Fredrick E. Clement and Hon. Rene Lastreto, II, concerning the suspension of Thomas O. Gillis[1] by the State Bar of California ("the State Bar") from the practice of law for a period of two years (the "Suspension").  The Suspension was to commence on December 1, 2019.  At the request of Mr. Gillis, the commencement date of the Suspension was extended by the State Bar to January 31, 2020, to allow Mr. Gillis to complete substitutions of attorneys into his pending 603 open bankruptcy cases.

The February 1, 2020 Suspension was further retroactively extended by Order of the State

---

[1] There are two persons named Thomas Gillis licensed by the State Bar of California.  The attorney who is the subject of this Order and the ongoing proceedings is Thomas O. Gillis, who the court will refer to in this Order as "Mr. Gillis" or "Thomas Gillis."

Bar filed February 7, 2020, to February 15, 2020, with the State Bar imposing the condition that Mr. Gillis not accept any more clients.

As addressed in greater detail in the following sections of this Memorandum, the attempts to substitute new counsel in for Mr. Gillis have not been successful for several reasons. The attempted substitutions involve the actions of Thomas Gillis and Mark J. Hannon, Esq., the California licensed attorney who Mr. Gillis has identified to this court as substituting in for Mr. Gillis, hiring all of Mr. Gillis' staff, and hiring Mr. Gillis as a paralegal.

The bankruptcy judges in this District require Thomas Gillis and Mark Hannon to address the following questions and provide copies of documents (the persons to whom the answers or documents required are identified) as part of the process in determining whether substituting Mark Hannon in as counsel in all 603 of Thomas Gillis' open bankruptcy cases is possible and proper.

Thomas Gillis and Mark Hannon Shall Provide Information Under Penalty of Perjury and Properly Authenticated Information or Documents Concerning:

A.    Mark Hannon is identified as the "shareholder" of a corporation identified as "Latino Law, Inc." In the registration documents filed with the State Bar for Latino Law, Inc. as a professional corporation for whose employees provide legal services,[2] the 100% shareholder is identified as Todd Whiteley, another California licensed attorney.

1.    Is Mark Hannon a shareholder of Latino Law, Inc.?

2.    Identify all shareholders of Latino Law, Inc.

3.    When did Mark Hannon acquire his shares of stock and the number of shares?

4.    What is/was Todd Whiteley's interest(s) in Latino Law, Inc.?

5.    When did Mark Hannon become the president, treasurer, secretary and sole director of Latino Law, Inc.?

6.    When did Todd Whiteley cease being the president, treasurer, secretary, and sole shareholder of Latino Law, Inc?"

_____

[2] State Bar Law Corporation Application - Attachment A, ADDENDUM "A," p. 5-7.

B.     Thomas Gillis and Mark Hannon filed substitutions of attorney which purported to substitute the corporation Latino Law, Inc. as the new attorney for some of Thomas Gillis' clients. The Local Rules of both the United States District Court (which admits attorneys to practice in this Federal District) and the United States Bankruptcy Court for the Eastern District of California require that only an individual attorney may initially appear for a party or substitute in as the attorney of record for a party.

      1.     What basis warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law did Thomas Gillis and Mark Hannon have for:

          a.     Submitting substitutions of attorney purporting to have the corporation Latino Law, Inc. substitute in as counsel of record in place of Thomas Gillis in Mr. Gillis' bankruptcy cases in this District?

C.     After the substitutions of Latino Law, Inc. were rejected by the bankruptcy judges in this District, a series of new substitutions were filed in which the attorney substituting in as counsel for Mr. Gillis' clients was identified as "Mark J. Hannon, dba Latino Law, Inc."

      1.     What legal basis exists for Mark J. Hannon, an individual to identify himself as doing business as Latino Law, Inc.?

      2.     With such identification, does Mark J. Hannon state that Latino Law, Inc. does not exist as a corporation, but is part of the sole proprietorship of Mark J. Hannon for which he uses that business name alias?

      3.     Has Mark J. Hannon hired all of the employees of Thomas Gillis who were part of his former law practice and Thomas Gillis as a paralegal working for Mark J. Hannon in Mr. Hannon's practice of law as "Mark J. Hannon, DBA Latino Law, Inc.?"

D.     Thomas Gillis and Mark J. Hannon, jointly or severally, shall provide copies of the following documents, which may be filed under seal with the court:

      1.     Executed copy of Purchase Agreement for Mark Hannon to be purchasing Thomas Gillis' law practice.

      2.     Executed copy of all agreements stating terms and conditions by which Mark Hannon is to substitute in for representation of Thomas Gillis' existing clients.

3. Executed copy of the Registration by Latino Law, Inc. with the State Bar identifying the shareholder, officers, employees, and number of persons practicing law at Latino Law, Inc. (State Bar Law Corporation Application - Attachment A).

4. Executed Copy of State Bar Declaration of Compliance with Rules 7.1-7.5 of the Rules of Professional Conduct (State Bar Law Corporation Attachment B).

5. Executed copy of employment and compensation agreement between Thomas Gillis and Mark J. Hannon, Thomas Gillis and Mark J. Hannon, dba Latino Law, Inc., or between Thomas Gillis and Latino Law, Inc.

6. Executed and filed copy of Notice of Employment of suspended attorney Thomas Gillis, Rule 5.3.1(d) filed with the State Bar.

7. Executed copy of current Secretary of State Statement of Information (From SI-550, Rev. 11/2019) filed for Latino Law, Inc.

## REVIEW OF SUSPENSION OF THOMAS GILLIS

Mr. Gillis has openly and candidly provided the court with numerous documents relating to the State Bar proceedings and the events leading up to his suspension. The records relating to the Suspension and extensions of the date the Suspension are available at the State Bar Website[3] or from the State Bar upon direct request.

Mr. Gillis has pending before this court six hundred and three (603) bankruptcy cases, the majority of which are four hundred and seventy-nine (479) Chapter 13 cases, and the remainder being one hundred twenty-four (124) Chapter 7 cases.

The Chief Justice of the California Supreme Court issued the *En Banc* Order imposing the two-year suspension on November 1, 2019.[4]

The two-year suspension from the practice of law was agreed to in Stipulation between Mr. Gillis and the State Bar executed on April 30, 2019 by Mr. Gillis.

Following the April 30, 2019 signing of the Stipulation for a two-year suspension from practicing law in California and it was forwarded to the California Supreme Court for issuance of

---

[3] http://www.calbar.ca.gov/

[4] *In re Thomas Oscar Gillis*, State Bar Court Nos 16-O-10780 (17-O-02624; 17-O-04790) ("State Bar Court Action"); Order of Suspension, ADDENDUM "B."

an order thereon, Mr. Gillis continued filing new Chapter 13 cases, the number of which by month is set forth in the following chart:

| Month | Number of Chapter 13 Cases Filed by Mr. Gillis |
|---|---|
| May 2019 | 10 |
| June 2019 | 4 |
| July 2019 | 11 |
| August 2019 | 10 |
| September 2019 | 5 |
| October 2019 | 29 |
| November 2019 | 21 |
| December 2019 | 3 |
| January 2020 | 1 |

With the recommendation for the stipulated Suspension before the Supreme Court and then the Chief Justice's Order for the two-year suspension being signed on November 1, 2019, in the months of October and November 2019, there was a 100%+ increase in the filing of Chapter 13 cases by Mr. Gillis. With the Chapter 13 cases running from at least three and up to five years, clearly Mr. Gillis could not expect to be providing significant legal services after the end of 2019, which was only two to three months after he filed many of these Chapter 13 cases.

For the fifty-four cases filed in the period October 1, 2019, through and November 2019, Mr. Gillis accepted $78,000.00 in a pre-petition retainer that was to be part of the flat fees (discussed *infra*) in thirty-eight Chapter 13 cases. For these fifty-four cases in which $78,000.00 pre-petition retainers have been paid, the status of the case and amount of fees for pre-petition retainer paid to Mr. Gillis are:

| Status of Chapter 13 Case | Amount Paid to Mr. Gillis in Pre-Petition Retainer |
|---|---|
| Four Cases (4) Cases - Confirmed Chapter 13 Plan | $8,000 |

| | |
|---|---|
| Thirty-One (31) Cases - Pending With No Plan Confirmed | $64,000 |
| | |
| 6000 Cases - Dismissed | $6,000 |

In addition, there are nine (9) Chapter 13 cases in which Mr. Gillis did not receive any pre-petition retainer which have been dismissed.

**First Extension of Suspension**

Facing the December 1, 2019 Suspension, Thomas Gillis requested a delay of the suspension until April 30, 2020, with his Amended *Ex Parte* Motion to the State Bar being filed on November 18, 2019. The Amended *Ex Parte* Motion to delay the Suspension is one hundred and fifty-eight (158) pages in length, consisting of: [a] The nine (9) page motion; [b] One hundred seventeen (117) page exhibit listing all of Mr. Gillis' clients; [c] Twenty-three (23) pages of medical records documenting medical conditions presented to show Mr. Gillis' limited ability to practice law and complete the substitutions by the scheduled December 1, 2019 Suspension, and [d] Thomas Gillis' six (6) page declaration. A copy of the Amended *Ex Parte* Motion and Mr. Gillis' declaration are attached to this Memorandum as ADDENDUM "C." In his Declaration, Mr. Gillis testifies that Todd Whiteley[5] is the attorney who was taking over Mr. Gillis' law practice. Additionally, Mr. Whiteley will be hiring Mr. Gillis' staff of thirteen (13) employees which are spread over five offices that Mr. Gillis maintains.

The State Bar delayed the commencement of the Suspension until January 31, 2020, as

---

[5] In the Declaration Mr. Gillis spells the purchaser's name as Todd "Whitley" and Todd "Whitely." The attorney identified as purchasing Mr. Gillis' practice and identified as the 100% shareholder, president, treasurer, secretary, and sole director of Latino Law, Inc. is stated to be Todd "Whiteley." The State Bar lists a Todd "Whiteley" as an attorney licensed to practice law in California. No Todd "Whitley" is reported by the State Bar as being licensed to practice law in California. It appears that in some of the documents presented by Mr. Gillis, Todd Whiteley's name is misspelled.

The references in documents presented by Mr. Gillis as referencing a Todd "Whitley" or Todd "Whitely" are read by the court as being a clerical error in the spelling of Mr. Todd Whiteley's last name and not a reference to some other person.

Mr. Gillis requested in his *Ex Parte* Motion. First Extension Order, filed November 27, 2019; a copy of which is attached to this Memorandum as ADDENDUM "D." The State Bar Court rejected the request to stay the commencement of the Suspension to April 30, 2020, as Mr. Gillis requested in the original *Ex Parte* Motion.

**Second Requested Extension**

On January 22, 2020, nine days before the Suspension was to take effect, Mr. Gillis filed a second motion to extend the commencement of the Suspension ("Second Extension Motion"). This Second Extension Motion is sixty-four (64) pages in length, consisting of:

> [a] The nine (9) page Motion,
>
> [b] Nine (9) page January 21. 2020 Declaration of Thomas Gillis,
>
> [c] Thirty (30) pages of medical records documenting medical conditions presented to show Mr. Gillis' limited ability to practice law and complete the substitutions by the scheduled December 1, 2019 suspension,
>
> [d] Thomas Gillis' prior six (6) page Declaration filed with the prior Amended *Ex Parte* Motion to extend the Suspension, and
>
> [e] an order of this Bankruptcy Court for Thomas Gillis to attend a hearing on January 24, 2020 to address the proper fees payable to Mr. Gillis under applicable federal law for legal services provided in the bankruptcy cases before the court.

A copy of the Second Motion and January 21, 2020 declaration of Mr. Gillis are attached to this Memorandum as ADDENDUM "E."

In the Second Extension Motion, Mr. Gillis states that the attorney who was to purchase his sole practitioner practice, Todd Whiteley, backed out of the sale because Mr. Whiteley's wife "insisted he quit." Mr. Gillis states that in a panic over the loss of Mr. Whiteley as the buyer of his practice, he turned to an old friend, attorney Mark Hannon. The Second Extension Motion states that "Mr. Hannon has agreed to substitute in on [Mr. Gillis'] active cases" and "hire much of member's staff to assist [Mr. Hannon] with Spanish speaking clients." Second Extension Motion, ¶ 23. Further, that Mr. Gillis has "agreed to stay on for at least a year to help with office work, research, preliminary preparation of motions and responses for Chapter 13 clients whose cases are pending." *Id.*

The State Bar Court granted a second extension, delaying the commencement of the

Suspension until February 15, 2020.  Second Extension Order, ADDENDUM "F."

On this last point of Mr. Gillis agreeing to continue for a year to assist Mr. Hannon with all of the existing cases for existing predominately Spanish speaking clients, there has been an unusual increase in case filings by Mr. Hannon.  Beginning on January 14, 2020, a week before Mr. Gillis filed the Second Extension Motion, and running through February 5, 2020,  Mr. Hannon has filed the forty-seven (47) new Chapter 7 and seven (7) new Chapter 13 cases.  A chart of these cases, the case number, debtors' names, and dates of filing are attached to this Memorandum as ADDENDUM "G."  In reviewing the debtors' names, almost all, if not all, have Hispanic surnames.

Looking at Mark Hannon's "normal" practice of filing bankruptcy cases in 2019, he filed nineteen (19) Chapter 7 cases, six (6) Chapter 13 cases, and one Chapter 11 case.  For his filings in the three week period of January 14, 2020, through February 5, 2020, Mr. Hannon filed 117% more Chapter 13 cases and 2,474%  more Chapter 7 cases in all of 2019 and the first two weeks of 2020.

It is not clear how Mark Hannon has such a dramatic increase in new cases filed in those three weeks after reportedly coming to an agreement with Mr. Gillis to substitute in on all of his 609 existing bankruptcy cases.

The case filing data for Mark Hannon for the pre-January 14, 2020 and all of 2019 is:

January 1through 13, 2020.................No Bankruptcy Cases Filed

December 2019...................................No Bankruptcy Cases Filed

November 2019.................................Five (5) Chapter 7 Cases Filed

October 2019.....................................No Bankruptcy Cases Filed

September 2019.................................One (1) Chapter 11 Case Filed

August 2019......................................Two (2) Chapter 7 Cases Filed
One (1) Chapter 13 Case Filed
(No Confirmed Plan)

July 2019...........................................No Bankruptcy Cases Filed

June 2019...........................................Three (3) Chapter 7 Cases Filed

May 2019...........................................Two (2) Chapter 13 Cases Filed
(Confirmed plans in both cases)

April 2019.........................................One (1) Chapter 7 Case Filed

March 2019.......................................One (1) Chapter 7 Case Filed
One (1) Chapter 13 Case Filed
(Confirmed plan)

February 2019....................................Five (5) Chapter 7 Cases Filed
One(1) Chapter 13 Case Filed
(Confirmed Plan)

January 2019.....................................Two (2) Chapter 7 Cases Filed
One (1) Chapter 13 Case Filed
(Confirmed Plan)

**DOCUMENTS FILED BY THOMAS GILLIS AND MARK HANNON
TO SUBSTITUTE COUNSEL IN PLACE OF THOMAS GILLIS**

Thomas Gillis and Mark Hannon, Esq. have filed a series of documents seeking to substitute counsel into Mr. Gillis' cases and assign Mr. Gillis' rights to attorneys' fees for services provided and for future services in the Chapter 13 cases, which Mr. Gillis could not perform in light of his two year suspension.

**<u>Original Substitution of Attorney Documents</u>**

One form of document filed in cases before all of the judges in the District is titled Substitution of Attorney. An example of this Substitution of Attorney is one filed on January 29, 2020, in *In re: Juvenal Zamorano*, Chapter 13 Case No. 15-20659, a copy of which is attached to this Memorandum as ADDENDUM "H." The information provided in the Substitution of Attorney Document in pertinent part includes:

Attorney Substituting Out From
Representation of Debtor.................................................Thomas O. Gillis

Attorney Substituting in to Represent
Debtor...........................................................................Latino Law, Inc.

The signature provided for Latino Law, Inc.
on the Substitution is..........................................<u>/s/ Mark J. Hannon, SBN 107829</u>
by Mark J. Hannon, Esq.
as Shareholder

Date Substitution Signed For Latino Law, Inc.................January 25, 2020

15-20659; Substitution of Attorney Document, Dckt. 50.

The court issued an order denying the request to substitute Latino Law, Inc. in as attorney of record. *Id.*; Order, Dckt. 52. This is the same form of the order as used by all of the bankruptcy

judges in this District in addressing the substitutions filed by Thomas Gillis and Mark Hannon for which the attorney of record was identified as Latino Law, Inc.  A copy of the Order is attached to this Memorandum as ADDENDUM "I."  The Order cites to the long standing Local Rule of the United States District Court[6] and the United States Bankruptcy Court in the Eastern District of California that require the attorney of record for a party be an individual, not a corporate or other fictitious entity.

**Revised Substitution of Attorney Document**

After the substitutions sought under the Original Substitution of Attorney Documents had been denied, a revised Substitution of Attorney Document form ("Revised Substitution of Attorney Document") was filed by Thomas Gillis and Mark Hannon in cases in this District.

An example of the Revised Substitution of Attorney Document is the one filed on February 5, 2020, in *In re: Victor Cruz Chavez and Monserrat Olvera*, Chapter 13 Case No. 19-27416, Dckt. 44; a copy of which is attached to this Memorandum as ADDENDUM "J."  The information provided in the Revised Substitution of Attorney Document in pertinent part includes:

Attorney Substituting Out From
Representation of Debtor.............................................Thomas O. Gillis

Attorney Substituting in to Represent
Debtor........................................................................Mark Hannon, DBA Latino Law, Inc.

The signature provided for Mark Hannon,
dba Latino Law, Inc. on the Substitution is.......[illegible signature]
                                                                                Mark Hannon, Esq.

Date Substitution Signed for
Mark Hannon, dba Latino Law, Inc..............................February 3, 2020

19-27416; Revised Substitution of Attorney Document, Dckt. 44.

The judges in the District are reviewing the Revised Substitution of Attorney Document and no orders have been issued thereon as of the time this Memorandum and Order thereon were being

---

[6] The online Attorney Look Up feature of the United States District Court for the Eastern District of California website reports that Thomas Gillis has been admitted in the Eastern District of California since April 22, 1993, and Mark Hannon has been admitted in the Eastern District of California since June 3, 1983.
http://www.caed.uscourts.gov/caednew/index.cfm/attorney-info/attorney-admission-search/

issued.

While an individual's name, Mark Hannon, has been added to say who the Debtor is substituting as counsel, it is qualified by stating that the individual is doing business as a corporation - "Latino Law, Inc."

An initial review of California law concerning individuals attempting to identify themselves as a corporation in doing business turned up California Business and Professions Code § 17901.5, which states (emphasis added) as to the use of fictitious names by an individual:

> § 17910.5. Fictitious business name; indication of corporate status
>
> (a) **No person shall** adopt any **fictitious business name** which **include**s "Corporation," "Corp.," "Incorporated," or "**Inc.**" **unless** that **person is a corporation** organized pursuant to the laws of this state or some other jurisdiction.
>
> . . . [limitations on identifying oneself as a limited liability company]
>
> (c) A county clerk shall not accept a fictitious business name statement which would be in violation of this section.

Thus, it does not appear that Mark Hannon, if substituting in individually as the counsel for Debtor, can identify himself as Mark Hannon, dba Latino Law, Inc.

### DOCUMENTS FILED BY THOMAS GILLIS AND MARK HANNON PURPORTING TO ASSIGN UNEARNED FEES OF THOMAS GILLIS

Being addressed in other joint proceedings being conducted in the District are the attorneys' fees which Thomas Gillis has earned which will be paid in the future through a debtor's performance of a Chapter 13 Plan.  Being addressed is the issue that pursuant to the Local Bankruptcy Rules, Thomas Gillis elected to be paid a flat fee of not more than $4,000.00 in the consumer debt Chapter 13 cases he filed.  Local Bankruptcy Rule ("LBR") 2016-1.  For the flat fee, debtor counsel must provide the services in filing the case, confirming the plan, review the claims, address issues relating to modification of the plan, assisting the debtor at the completion of the plan to obtain their discharge, and other legal services.  These services are described in the Eastern District of California Rights and Responsibilities of Chapter 13 Debtors and the Attorneys Form EDC 3-096. A copy of the Rights and Responsibilities Form EDC 3-096 signed and filed by Thomas Gillis in *In re Victor Cruz Chavez and Monterrat Olivera* , ("*In re Chavez/Olivera*")is attached to this Memorandum as

ADDENDUM "K." 19-27416; Rights and Responsibilities Form, filed December 20, 2019, Dckt. 22.

**Assignment For Payment of Attorney
Fees and Contract Form**

Thomas Gillis and Mark Hannon have filed in some of Mr. Gillis' cases a document titled Assignment for Payment of Attorneys' Fees and Contract ("Assignment For Payment/Contract"). An example of this document is attached to this Memorandum as ADDENDUM "L," which was filed in Chapter 13 case *In re Ramon Para*. 19-26476, Assignment For Payment/Contract, Dckt. 27.

The Assignment for Payment/Contract filed in *In re Ramon Para* on January 28, 2020, includes the following in pertinent part:

A.    The assignment is stated to be between Thomas and Latino Law, Inc.

B.    All of the remaining legal work will be done by Latino Law, Inc.

C.    The remaining fees to be paid in the case of $6,000.00 will be paid to Latino Law, Inc. in the place of Thomas Gillis.

D.    Latino Law, Inc. will be substituted in as counsel of record to represent all of Thomas Gillis who have confirmed plan but whose fees have already been paid to Thomas Gillis.

E.    The Assignment for Payment/Contract is signed by Thomas Gillis and Mark J. Hannon, Latino Law, Inc.

*Id.*

The judges in this District have provided a uniform response to these Assignment for Payment/Contract forms filed by Thomas Gillis and Mark Hannon. No relief is granted pursuant to such document. In the *Ramon Parra* Chapter 13 case, the court's order was filed on February 6, 2020. *Id.*, Order, Dckt. 32; attached to this Memorandum as ADDENDUM "M." This order addresses the fee allowance provided under the Bankruptcy Code, that the fees under the fixed fee provision are for services provided throughout the entire case, that Mr. Gillis has not and cannot provide such services due to the Suspension and that the court must determine the portion of the fixed fee that is reasonable for the services that Mr. Gillis did provide prior to the Suspension.

In the *Ramon Parra* case, the bankruptcy case was filed on October 17, 2019. No Chapter 13

Plan has been confirmed.[7] The $6,000.00 fees referenced indicate that this was being presented as a business Chapter 13. As stated on the Amended Rights and Responsibilities Form filed by the Debtor and Thomas Gillis states that $1,500.00 had been paid in advance and $4,000.00 remained to be paid through a confirmed Chapter 13 Plan. *Id.*, Dckt. 3.

A review of the file indicates that there is substantial pre- and post-confirmation work remaining to be done by an attorney for the debtor. Because of the Suspension, Mr. Gillis cannot do such work, cannot be allowed fees for such work, and cannot assign such fees for future work.

Whomever substitutes in as counsel for the debtor in the future will make the fee arrangement with his or her new client, which fee arrangement is subject to approval by the court before such counsel can assert the right to be paid such fees.

**STATE BAR OF CALIFORNIA**
**AND SECRETARY OF STATE DOCUMENTS**
**RELATING TO LATINO LAW, INC.**

**State Bar Documents**

California law requires that professional corporations whose employees practice law must register with the State Bar. Bus & Prof Code §§ 6160 et seq. The State Bar, from its public records, has provided to the court the following documents relating to Latino Law, Inc.:

    A.      Certification that Latino Law, Inc. was issued a Certificate of Registration with the State Bar of California on January 23, 2020, and Latino Law, Inc. Certificate is Active. ADDENDUM "A" at 3.

    B.      Application for Issuance of Certificate of Registration filed by Latino Law, Inc., which was received by the State Bar of California on November 26, 2019. ADDENDUM "A" at 4-7. The information in the Application includes:

         1.      Contact named for Latino Law, Inc. is Todd Whiteley.

         2.      Attachment A to the Application is the list of attorneys of Latino Law, Inc., which states:

---

[7] Confirmation of a plan is significant when an attorney opts to take a flat fee as provided in L.B.R. 2016-1 because as part of the confirmation order the court will also approve the fees for such attorney.

a.    The only shareholder of Latino Law, Inc. is Todd Whiteley.

b.    The officers of Latino Law, Inc. are:

(1)    President............Todd Whiteley

(2)    Treasurer............Todd Whiteley

(3)    Secretary............Todd Whiteley

c.    The directors of Latino Law, Inc. are:

(1)    Todd Whiteley

d.    The attorney employees of Latino Law, Inc. are:

(1)    Todd Whiteley

e.    Total number of persons practicing law on behalf of the Law Corporation............... 1

C.    Attachment C-1 Standard Law Corporation Guarantee received by the State Bar of California on January 23, 2020.

1.    The only shareholder of Latino Law, Inc. is stated to be Todd Whiteley.

2.    The statement that the only shareholder of Latino Law, Inc. is Todd Whiteley is:

a.    Signed on January 22, 2020

b.    Has an effective date of January 22, 2020

c.    Is signed by Todd Whiteley

3.    Attachment B is the Declaration of Compliance with Rules 7.1-7.5 of the Rules of Professional Conduct, which has a received date of November 26, 2019.

a.    This Certification is signed by Todd Whiteley

b.    Has an executed on date of November 11, 2019.

D.    A copy of the Articles of Incorporation with a Secretary of State filed date of August 22, 2019.   ADDENDUM "N."  The information included in the Articles of Incorporation include:

1.    The agent for service of process is Thomas Gillis.

2.    Latino Law, Inc. is authorized to issue only once class of shares of stock and is authorized to issue 1,000 shares of stock.

3.      The Articles are signed by Thomas Gillis.

4.      The Articles contain the certification stamp of the Secretary of State, which is dated November 17, 2019.

5.      Attached to the Articles of Incorporation is a two page excerpt of the Latino Law, Inc. Articles of Incorporation.

    a.      A Certification dated November 21, 2019, signed by Todd Whiteley is included with the excerpt.  The Certification has a State Bar of California received date of November 26, 2019.

6.      The final page of the excerpt is a Stock Certificate for Latino Law, Inc.  The information on the Stock Certificate includes:

    a.      Todd Whiteley is identified as the holder of 1,000 shares of Latino Law, Inc.

    b.      The Stock Certificate is dated November 21, 2019.

    c.      The Stock Certificate is signed by Todd Whiteley as Secretary and Todd Whiteley as President.

**California Secretary of State**
**Filed Documents**

The documents provided by the State Bar of California included documents filed with the California Secretary of State.  As is well known, the Secretary of State maintains a website[8] at which documents filed with the Secretary of State can be reviewed by the public.  Going to the Secretary of State website and running a search using the corporation name Latino Law, Inc., the Secretary of State reports two documents filed with the Secretary of State.  One is the Articles of Incorporation which is the same as provided by the State Bar of California.

The second is the required Statement of Information, a copy of which is attached to this Memorandum as ADDENDUM "O."   This Statement of Information includes the following information:

1.      The Officers of Latino Law, Inc. are:

    a.      Chief Executive Officer...........Mark J Hannon

    b.      Secretary.................................Mark J Hannon

    c.      Chief Financial Officer............Mark J Hannon

---

[8]  https://businesssearch.sos.ca.gov/

2.       The Directors of Latino Law, Inc are:

        a.     Mark H. Hannon

3.       The Agent for Service of Process is:

        a.     Mark J Hannon

4.       The addresses for the Officers, Secretary, Chief Financial Officer, Director, and Agent for Service of Process are:

        a.     1006 H Street #1, Modesto, California.

The Statement of Information signature block is dated January 29, 2020, the typed name of the person who completed the form is Thomas Gillis. However, the Statement of Information is not signed.

The State Bar of California lists the following address and other information for Mark J. Hannon:[9]

> Mark J. Hannon #107829
> License Status: Active
>
> Address: 1114 W Fremont St, Stockton, CA 95203
> County: San Joaquin County
>
> Phone Number: (209) 942-2229
> Fax Number: (209) 942-3973
> Email: markjhannon@yahoo.com

The State Bar of California does not list there being a licensed attorney with the name Mark H Hannon. It appears that the name "Mark H Hannon" on the Statement of Information is a typographical error.

The State Bar of California lists the following address and other information for Thomas O Gillis:[10]

> Thomas Oscar Gillis #40186
> License Status: Not Eligible to Practice Law(Actual Suspension Delayed)
>
> Address: Thomas O Gillis, Attorney, 1006 H St Ste 3, Modesto, CA

---

[9] http://members.calbar.ca.gov/fal/Licensee/Detail/107829

[10] http://members.calbar.ca.gov/fal/Licensee/Detail/40186

95354-2384
County: Stanislaus County

Phone Number: (209) 575-1153
Fax Number: (866) 750-5566
Email: tg341@gillislaw.us

**REQUIRED HEARING, PROVIDING OF INFORMATION AND DOCUMENTS**

As discussed above, what has been filed with the court raises serious issues and questions concerning who, or what, is attempting to substitute in. Though taking several shots at it, the substitution of attorney forms are not only inconsistent with what is required under Federal law, but inconsistent with California law. These forms may well appear to be carefully crafted documents by which the perceived individual attorney who is purported to be substituting in is not, but there is some "organization" being run that is doing all of the legal work - not the attorney.

It also appears that the clients, with a substantial increase in Chapter 13 case filing by Mr. Gillis on the eve of the Suspension have become the justification for getting the commencement of the Suspension extended. Additionally, the attempted substitutions of a corporation, Latino Law, Inc., and then the use of a corporate fictitious name for an individual, "Mark J. Hannon, DBA Latino Law, Inc.," has worked to delay the substitutions, which then are being used as "justifications" for further delaying the Suspension.

To expedite the resolution of these issues, providing not only the individual former debtor clients of Mr. Gillis (who is now suspended), but also Thomas Gillis and Mark J. Hannon a coordinated opportunity to resolve inadvertent missteps, clarify any confusion of the various bankruptcy judges, and coordinate proceedings, the court sets a hearing on these issues for at 3:00 p.m. on March 25, 2020, in the United States Bankruptcy Court, 2500 Tulare Street, 5th Floor, Courtroom 13, Fresno, California. This coincides with the hearing being conducted by Judges Clement and Lastreto in determining the methodology for awarding the portions of the fixed fees for legal services provided, and the portion that relates to the legal services that Mr. Gillis cannot provide due to the Suspension.

///

///

The court shall issue a separate order for the hearing, appearances of Mr. Gillis and Mr. Hannon, and the production of declarations and documents.

**Dated:** February 14, 2020          **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

**The State Bar**
*of California*

**OFFICE OF ATTORNEY REGULATION
& CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105          888-800-3400          AttorneyRegulation@calbar.ca.gov

THIS IS TO CERTIFY:

The undersigned is employed by the State Bar of California, Attorney Regulation and Consumer Resources.   As such, one of my responsibilities is to maintain the records relating to the registration of law corporations and limited liability partnerships by the State Bar of California.

I have this day examined the computer records maintained by the State Bar relating to the registration of law corporation, and I have found that "**Latino Law, Inc.** ", was originally issued Certificate of Registration No. **25265**, effective January 23, 2020.

This certificate has remained since that date, and is at date hereof, **ACTIVE**.

Date:   February 7, 2020

Robert McPhail
Attorney Regulation and Consumer Resources

# ADDENDUM A



The State Bar
*of California*

**OFFICE OF ATTORNEY REGULATION &
CONSUMER RESOURCES**



January 23, 2020

Todd Whiteley, Esq.
Latino Law, Inc.
P.O. Box 576790
Modesto, CA 95357

RE:     Latino Law, Inc.
        Certificate of Registration No. **25265**
        Verification Code: **0**

Dear Atty. Whiteley:

The Certificate of Registration for the above-entitled professional law corporation has been approved and is enclosed. The Certificate has an effective date of **January 23, 2020**.

Pursuant to Rule VI of the Law Corporation Rules, the above-listed professional corporation must file an annual report on or before March 31 of each year, on a form provided by this office. An annual report form will be mailed to the corporation's address of record (set forth above) in **early March , 2021**. If the corporation does not receive an Annual Report form in the month of March, 2021, please contact our office immediately.

In the meantime, if you wish to report any law corporation changes before next January, please obtain a Special Report form by either accessing The State Bar of California website, **www.calbar.ca.gov**, or calling Member Service Center at 1-888-800-3400.

Sincerely,

Nina Hester
Program Specialist

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

# CERTIFICATE OF REGISTRATION

## The State Bar *of California*

certifies that having complied with the requirements of the statutes of the State of California and applicable rules and regulations pertaining to professional corporations,

## Latino Law, Inc.

is registered as a

## Law Corporation

Certificate Number:     25265

Date:    January 23, 2020

*Leah J. Wilson*

Leah T. Wilson,
Executive Director



## The State Bar
### of California

**OFFICE OF ATTORNEY REGULATION**
**& CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105     888-800-3400     LawCorp@calbar.ca.gov

## Application for Issuance of a Certificate of Registration as a Law Corporation

**RECEIVED MBS**
**NOV 26 2019**

| FOR OFFICIAL STATE BAR USE ONLY | # _____ |
|---|---|
| ✓ $200 / Check Number | D0 4072 |
| No Check | |
| Initials: mb | |
| Application #: | 25265 |

### 1) CORPORATE INFORMATION

Name of Law Corporation including Corporate Designation:

> Latino Law, Inc. ✓

Contact Name: Todd Whiteley      E-mail: bkfmhm@gmail.com

Address Line 1: P.O. Box 576790

Address Line 2:

City: Modesto     State: CA     Zip: 95357     Phone: 209.496.2552

### 2) ATTACHMENTS

**Complete and Attach the following:**

☑ **Attachment A**: Listing all shareholders, officers, directors and all other attorneys practicing law on behalf of the corporation, including all individuals/entities practicing in partnership, association, "of counsel", part-time or on a contract basis.

☑ **Attachment B**: Declaration of Compliance with Rules 7.1-7.5, Rules of Professional Conduct of the State Bar of California.

☑ **Attachment C:**
    **Attachment C-1**: the Standard Law Corporation Guarantee     **OR**     **Attachment C-2**: the Standard Law Corporation Guarantee for Law Corporations Practicing in Partnership with Other Law Corporations

☑ **Secretary of State Certification:**
    California Law Corporation: Attach an ORIGINAL certified copy of the law corporation's Articles of Incorporation     **OR**     Out of State Law Corporation: Attach BOTH an ORIGINAL certified copy of Statement of Designation by Foreign Corporation AND an ORIGINAL Certificate of Status of Foreign Corporation

☑ **Bylaws Excerpts**: Please refer to the <u>Law Corporation Rules of the State Bar</u> amended January 1994. Use the exact language from Rule 3.157, paragraphs A – F, in the portions of your bylaws that pertain to ownership and transfer of shares in the corporation. Attach only the portions of the law corporation's bylaws which contain this language. Do not submit your entire set of bylaws.

☑ **Secretary's Certification of Bylaws Excerpts**: Certifying that the excerpts attached are a true and correct copy of excerpts from the bylaws of the corporation. Signature of the corporate secretary must be **original**.

☑ **Specimen Share certificate**: Photocopy of both sides, containing the legend required by State Bar Law Corporation Rule 3.157.

☑ **Payment**: A $200 non-refundable fee must accompany this Application. Make checks payable to: The State Bar of California.

### 3) DECLARATION

I am Todd Whiteley , President
     (Name of Officer)         (Title of Officer)

of Latino Law, Inc.           and as such make this declaration
    (Complete Name of Corporation)

for and on behalf of said corporation. I have read the foregoing and all attachments thereto and know the contents thereof and the same are true of my own knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing application and all attachments are true and correct and that the applicant is an existing corporation and its organization, bylaws, Articles of Incorporation and general plan of operation are such that its affairs will be conducted in compliance with the State Bar Act, and the applicable provisions of the Corporations Code, The Rules of Professional Conduct of the State Bar, the <u>Law Corporation Rules of the State Bar</u> and such other laws, rule and regulations as may be applicable.

Executed On: 11-21-19

Print Name: Todd Whiteley      Signature: *Todd A Whitely*

### 4) SUBMISSION INFORMATION

Submit completed application with all attachments and payment to:

> **The State Bar of California**
> **Law Corporations**
> **180 Howard Street**
> **San Francisco, CA 94105-1617**

LCApp0519



**THE STATE BAR OF CALIFORNIA**
**LAW CORPORATION**
180 Howard Street · San Francisco, CA 94105-1617
(888) 800-3400 · lawcorp@calbar.ca.gov

## Law Corporation Application – Attachment A
## List of Attorneys

FOR OFFICIAL STATE BAR USE ONLY

Application #: _____

**Complete Name of Law Corporation:** Latino Law, Inc.

### 1) Shareholders

A)   Name                     CA Bar Number                Jurisdiction(s) in which admitted
                              (if applicable)

Todd Whiteley               195707                        California

_____            _____              _____

_____            _____              _____

_____            _____              _____

B)   Are any of the above-listed shareholders:

    Shareholders in another California law corporation?          Yes ☐  No ☑
    Partners in a limited liability partnership?                Yes ☐  No ☑

C)   If you checked "Yes" for either question in Part B, complete this section. In the third column, indicate which type of law practice relationship with the Applicant applies: **C** for "of counsel"; **P** for "in partnership"; **A** for "in association"; or **N** for "no law practice relationship".

Name of Law Corporation or LLP      CA State Bar Cert.      Law Practice Relationship
                                    Of Reg. Number          "C", "P", "A," or "N"

_____                    _____          _____

_____                    _____          _____

☐   Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Shareholders" as necessary.

### 2) Officers

**NOTE**: In law corporations with more than one shareholder, all officers must be shareholders. See California Corporations Code §13403

Name                          CA Bar Number                Jurisdiction(s) in which admitted
                              (if applicable)

Todd Whiteley               195707                        California
(President)
Todd Whiteley               195707                        California
(Treasurer)
Todd Whiteley               195707                        California
(Secretary)

LCApp0312-att1

**3) Directors**

NOTE: Directors of a law corporation must also be shareholders. See California Corporations Code §13403

| Name | CA Bar Number (if applicable) | Jurisdiction(s) in which admitted |
|---|---|---|
| Todd Whiteley | 195707 | California |
| | | |
| | | |

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Directors" as necessary.

**4) Attorney Employees**

| Name | CA Bar Number (if applicable) | Jurisdiction(s) in which admitted |
|---|---|---|
| Todd Whiteley | 195707 | California |
| | | |
| | | |

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Attorney Employees" as necessary.

**5) Attorneys Practicing Law on Behalf of a Partnership in Which the Law Corporation is a Partner**

| A) Name | CA Bar Number (if applicable) | Jurisdiction(s) in which admitted |
|---|---|---|
| N/A | | |
| | | |
| | | |

B) Is the partnership a limited liability partnership (LLP)?     Yes ☐ No ☐

C) If Yes: LLP Name        CA State Bar LLP Cert. of Reg. No.

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Law Corp Partnership" as necessary.

**6) Attorneys Practicing Law on Behalf of an Association in Which the Law Corporation has Established a Relationship of a Continuous Nature.**

| Name | CA Bar Number (if applicable) | Jurisdiction(s) in which admitted |
|---|---|---|
| N/A | | |
| | | |

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Law Corp Relationship" as necessary.

7) **Other Law Corporations Practicing in the Partnership or Association** ━━━━━━━

| Name | State of Incorporation | CA State Bar Cert. of Reg. No (If Applicable) |
|---|---|---|
| N/A | | |
| | | |
| | | |

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Law Corp Association" as necessary.

8) **Other Attorneys ("Of Counsel", "Contract Attorneys", Part-Time Attorneys)** ━━━━━━━

| Name | CA Bar Number (if applicable) | Jurisdiction(s) in which admitted |
|---|---|---|
| N/A | | |
| | | |
| | | |

☐ Check here if additional sheets are attached. Attach additional sheets labeled "Att-A: Law Corp Others" as necessary.

9) **Total number of Persons Practicing law on behalf of the Law Corporation: *** 1

*Use the total in item #9 to calculate the dollar amounts to be set forth on the Standard Law Corporation Guarantee (Attachment C-1) or Standard Law Corporation Guarantee for Law Corporations Practicing in Partnership with other Law Corporations (Attachment C-2) See the Guarantee Worksheet for how to calculate the correct dollar amounts for the guarantee.

$50,000.00 (Fifty Thousand Dollars).



## The State Bar
### of California

**OFFICE OF ATTORNEY REGULATION & CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105      888-800-3400      LawCorp@calbar.ca.gov

## Attachment C-1 Standard Law Corporation Guarantee

**FOR OFFICIAL STATE BAR USE ONLY**

**RECEIVED**

JAN 2 3 2020

Application Member Services Center (MSC)
The State Bar of California

**1) NOTES**

See the <u>Law Corporation Guarantee Worksheet</u>, or Section #11 of the Annual Renewal Form for instructions on calculating the correct dollar amount for the guarantee.

This guarantee is not valid without original signatures.

**2) DECLARATION**

The undersigned, being shareholder(s) of

Latino Law, Inc.

(Set forth complete name of corporation including corporate designation)

hereby guarantee(s) payment by the corporation (and, if our corporation shall have more than one shareholder, this obligation shall be joint and several among the shareholder(s) of all claims established against it by its clients for errors or omissions arising out of the practice of law by the corporation in an amount not to exceed $ _____50,000.00_____ for each claim with an aggregate maximum liability not to exceed $ _____100,000.00_____ per calendar year; provided that any payment required to be made hereunder shall be offset by the amount paid by any insurance company providing errors or omissions insurance for the corporation or any of its shareholders.

DATE EXECUTED: _____1/22/2020_____      EFFECTIVE DATE: _____1/22/2020_____

### SHAREHOLDER(S) SIGNATURE(S)
(ALL Shareholders must sign.
Signatures MUST be original.)

| Print Name | Signature |
|---|---|
| Todd Whiteley | *Todd Whitely* |
| | |
| | |
| | |
| | |
| | |

☐ **Additional Sheets are Attached**

**Attach this form to your Annual Renewal if you are executing a new guarantee**

LCApp0519

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017



## The State Bar
### *of California*

**OFFICE OF ATTORNEY REGULATION & CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105          888-800-3400          LawCorp@calbar.ca.gov

## Law Corporation – Attachment B

**Declaration of Compliance with Rules 7.1 - 7.5,
Rules of Professional Conduct of
The State Bar of California**

> **FOR OFFICIAL STATE BAR USE ONLY**
>
> # RECEIVED
>
> ## NOV 2 6 2019
>
> Member Services Center (MSC)
> Application #State Bar of California

The undersigned, on behalf of

**Latino Law, Inc.**

(Set forth complete name of corporation and designation)

does hereby certify that the name of this law corporation complies with the Rules of Professional Conduct of the
State Bar of California, Rules 7.1 - 7.5.

### DECLARATION

I am a person authorized to act on behalf of this law corporation, and do hereby make this declaration on behalf of
said corporation. I have read the foregoing and the same is true of my own knowledge. I declare, under penalty of
perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on:     11-21-2019

Signature:       *[signature]*

Print Name:      **Todd Whiteley**

(Person authorized to act on behalf of the Law Corporation)

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

4310472



**Secretary of State**
**Articles of Incorporation of a**
**Professional Corporation**

**ARTS-PC**

**FILED**
Secretary of State
State of California

AUG 22 2019

*This Space For Office Use Only*

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee  –  $100.00**

**Copy Fees  –  First page $1.00; each attachment page $0.50;**
Certification Fee - $5.00

*Note:* Corporations may have to pay a minimum $800 tax to the California
Franchise Tax Board each year. For more information, go to *https://www.ftb.ca.gov.*

**1. Corporate Name** (Contact the California state board or agency that controls your profession to find out **if your profession is authorized to be a corporation in California** and if there are any specific corporate name style rules. Go to *www.sos.ca.gov/business/be/name-availability* for general corporate name requirements and restrictions.)

The name of the professional corporation is   Latino Law, Inc.

**2. Business Addresses** (Enter the complete business addresses. Item 2a cannot be a P.O.Box or "in care of" an individual or entity.)

| a. Initial Street Address of Corporation - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1006 H Street | Modesto | Ca | 95354 |
| b. Initial Mailing Address of Corporation, if different than Item 2a | City (no abbreviations) | State | Zip Code |
| | | | |

**3. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 3a and 3b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Thomas | Oscar | Gillis | |
| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
| 1006 H Street | Modesto | CA | 95354 |

**CORPORATION** – Complete Item 3c. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b |
|---|
| |

**4. Shares** (Enter the number of shares the corporation is authorized to issue. Do not leave blank or enter zero (0).)

This corporation is authorized to issue only one class of shares of stock.
The total number of shares which this corporation is authorized to issue is _____ 1000 _____.

**5. Purpose Statement** (Contact the California state board or agency that controls your profession to find out if your profession is authorized to be a corporation in California. Go to *www.dca.ca.gov/about_dca/entities.shtml* for more information.)

The purpose of the corporation is to engage in the profession of _____ practicing law _____
and any other lawful activities (other than the banking or trust company business) not prohibited to a corporation
engaging in such profession by applicable laws and regulations. This corporation is a **professional corporation** within
the meaning of California Corporations Code section 13400 et seq.

**6. Read and Sign Below** (This form must be signed by each incorporator. See Instructions. Do not include a title.)

_____
Signature

Thomas O. Gillis
Type or Print Name

ARTS-PC (REV 06/2019)

2019 California Secretary of State
bizfile.sos.ca.gov

I hereby certify that the foregoing
transcript of_____|____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

NOV 1 7 2019

Date:_____ 

ALEX PADILLA, Secretary of State

## ARTICLE V
## CORPORATE RECORDS AND REPORTS

5.01. Every year, on or before March 31, the corporation shall file an annual report covering the calendar year immediately preceding, on a form provided by the California State Bar, under Business and Professions Code §6163. This report shall be signed and verified by an officer of the corporation.

5.02. In accordance with Law Corporation Rule VI, the corporation shall file a special report on a form provided by the California State Bar within 30 days of any change relating to the requirements of Law Corporation Rule IV, including any change in directors, officers, employees practicing law, share ownership, amendments to the articles of incorporation, and amendments to portions of the bylaws required by the Law Corporation Rules to be filed. A copy of all notices received from an insurance company of termination or cancellation of, or intention to terminate or cancel malpractice insurance required shall be filed immediately with the State Bar.

5.03. For purposes of determining the shareholders entitled to receive payment of dividends or other distributions or allotment of rights, or entitled to exercise any rights in respect of any other lawful action (other than voting at and receiving notice of shareholders' meetings and giving written consent of the shareholders without a meeting), the board of directors may fix in advance a record date, which shall be not more than 60 nor less than 10 days before the date of the dividend payment, distribution, allotment, or other action. If a record date is so fixed, only shareholders of record at the close of business on that date shall be entitled to receive the dividend, distribution, or allotment of rights, or to exercise the other rights, as the case may be, despite any transfer of shares on the corporation's books after the record date, except as otherwise provided by statute.

5.04. If the board of directors does not so fix a record date in advance, the record date shall be at the close of business on the later of (1) the day on which the board of directors adopts the applicable resolution or (2) the 60th day before the date of the dividend payment, distribution, allotment of rights, or other action.

## ARTICLE VI
## SHAREHOLDER RESTRICTIONS

6.01. The shares of this law corporation are subject to the following restrictions:

(A) A shareholder of a law corporation must be licensed and entitled to practice law;

(B) The shares of the law corporation must be owned only by that corporation or a shareholder;

(C) The shares of a deceased shareholder must be sold or transferred to the law corporation

5

or its shareholders within six months and one day following the date of death;

(D) The share certificates of the law corporation must set forth the preceding restrictions of this rule regarding ownership, sale, or transfer of shares. These restrictions must also be set forth in the articles of incorporation or bylaws.

(E) The shares of a shareholder who is ineligible to practice law or legally Disqualified to render professional services to the law corporation must be sold or transferred to a qualified shareholder within ninety days after the date of ineligibility or disqualification. The terms of such a sale or transfer of shares must be set forth in the articles, the bylaws, or a written agreement.

(F) The shares of a shareholder disqualified for any reason may be resold to that shareholder upon his or her becoming eligible to practice law.

6.02. Despite any provision to the contrary, income of the corporation attributable to its practice of law while a shareholder is a disqualified person as defined by Corporations Code §13401(e) shall not in any manner accrue to the benefit of that shareholder or his or her shares.


ARTICLE VII
INSURANCE

7.01. In accordance with the requirements set forth in Law Corporation Rule IV(B), the corporation shall provide and maintain security by insurance or otherwise for claims against it by its clients for errors and omissions arising out of the corporation's practice of law.

ARTICLE IIX

8.01. Except when such provisions are in conflict with or inconsistent with the California Moscone-Knox Professional Corporation Act, the provisions of the Law Corporation Rules of the California State Bar shall apply. The construction of these bylaws shall be governed by the general provisions, rules of construction, and definitions in Corporations Code §§100-195. Without limiting the generality of this provision, the singular number includes the plural, the plural includes the singular, and the term "person" includes a corporation and a natural person.

ARTICLE IX
AMENDMENTS OF ARTICLES OF INCORPORATION

9.01. Except as otherwise provided by the articles of incorporation, the law, or the Law Corporation Rules of the California State Bar, amendments to the articles of incorporation may be adopted if approved by the directors and approved by a majority of the outstanding shares entitled to vote, before or after approval by the directors. An amendment to the

6

**RECEIVED**

NOV 2 6 2019

Member Services Center (MSC)
The State Bar of California

**CERTIFICATION**

I, Todd Whiteley, Secretary of Latino Law, Inc. hereby certify under penalty of perjury, the foregoing is true and correct, that the two page excerpts from the bylaws of Latino Law, Inc. and affixed hereto are true and correct copies of the excerpts of the bylaws of Latino Law, Inc. Executed at Modesto, California.

_____11-21-19_____

Date

Todd Whiteley, Esq.



# Latino Law, Inc

### A PROFESSIONAL LAW CORPORATION

This Certifies that _____ TODD WHITELEY _____ *is the registered*

*holder of* _____ ONE THOUSAND _____ *shares*

### LATINO LAW, INC

- A shareholder of a law corporation must be licensed and entitled to practice law.
- The shares of a law corporation must be owned only by that corporation or a shareholder.
- The shares of a deceased shareholder must be sold or transferred to the law corporation or its shareholders within six months and one day following the date of death.
- The shares certificate of the law corporation must set forth the preceding restrictions of this rule regarding ownership, sale, or transfer of shares. These restrictions must also be set forth in the articles of incorporation or bylaws.
- The shares of a shareholder who is ineligible to practice law or legally disqualified to render professional services to the law corporation must be sold or transferred to a qualified shareholder within ninety days after the date of ineligibility or disqualification. The terms of such a sale or transfer of shares must be set forth in the articles, the bylaws, or a written agreement.

In Witness Whereof, *the said Corporation has caused this Certificate to be signed by its duly authorized officers*

*this* _____ 21st _____ *day of* _____ November _____ *A.D.* 2019

TODD WHITELEY,     SECRETARY

TODD WHITELEY,     PRESIDENT

(State Bar Court Nos. 16-O-10780 (17-O-02624; 17-O-04790))

S256770

# IN THE SUPREME COURT OF CALIFORNIA

SUPREME COURT
**FILED**

### En Banc

NOV 0 1 2019

In re THOMAS OSCAR GILLIS on Discipline

**Jorge Navarrete Clerk**

Deputy

The court orders that Thomas Oscar Gillis (Respondent), State Bar Number 40186, is suspended from the practice of law in California for three years, execution of that period of suspension is stayed, and Respondent is placed on probation for four years subject to the following conditions:

1. Respondent is suspended from the practice of law for a minimum of the first two years of probation, and Respondent will remain suspended until the following requirements are satisfied:

   i. Respondent makes restitution to Teena and Ramiro Gutierrez, in the amount of $5,113 plus 10 percent interest per year from August 14, 2015 (or reimburses the Client Security Fund, to the extent of any payment from the Fund to such payee, in accordance with Business and Professions Code section 6140.5) and furnishes satisfactory proof to the State Bar's Office of Probation in Los Angeles; and

   ii. Respondent provides proof to the State Bar Court of rehabilitation, fitness to practice and present learning and ability in the general law. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(c)(1).)

2. Respondent must comply with the other conditions of probation recommended by the Hearing Department of the State Bar Court in its Order Approving Stipulation filed on June 7, 2019.

3. At the expiration of the period of probation, if Respondent has complied with all conditions of probation, the period of stayed suspension will be satisfied and that suspension will be terminated.

# ADDENDUM B

Respondent must provide to the State Bar's Office of Probation proof of taking and passing the Multistate Professional Responsibility Examination as recommended by the Hearing Department in its Order Approving Stipulation filed on June 7, 2019. Failure to do so may result in suspension. (Cal. Rules of Court, rule 9.10(b).)

Respondent must also comply with California Rules of Court, rule 9.20, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of this order. Failure to do so may result in disbarment or suspension. Respondent must also maintain the records of compliance as required by the conditions of probation.

Costs are awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

_____
**CANTIL-SAKAUYE**
*Chief Justice*

I, Jorge Navarrete, Clerk of the Supreme Court of the State of California, do hereby certify that the preceding is a true copy of an order of this Court as shown by the records of my office.
Witness my hand and the seal of the Court this
_____ day of ___ **NOV 0 4 2019** 20 _____
                    Month
By _____
                    Deputy

ORIGINAL

1    THOMAS O. GILLIS, SBN 40186
2    ATTORNEY AT LAW
     1006 H STREET, SUITE 3
3    MODESTO, CALIFORNIA  95354
     TEL (209)575-1153
4    FAX (866)750-5566
     EMAIL: TG341@gillislaw.us
5
6    Attorneys for Member
     THOMAS O. GILLIS, In pro per
7

**FILED**

**NOV 1 8 2019**

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

8               STATE BAR COURT
        HEARING DEPARTMENT – SAN FRANCISCO
9

10   In the Matter of:

11   THOMAS OSCAR GILLIS
12   No. 40186,

13   A Member of the State Bar.

Case Nos.  16-O-10780

          17-O-02624

          17-O-04790

**AMENDED MOTION OF MEMBER FOR AN ORDER OF THE STATE BAR SETTING OR EXTENDING THE TIME WHEN THE ACTUAL TWO YEAR SUSPENSION OF THE MEMBER'S LICENSE SHALL COMMENCE  AND FOR AN EXTENSION OF OTHER DEADLINES (CALIFORNIA RULES OF COURT 9.10(d) AND 9.10(e)**

23   Thomas O. Gillis\* moves the State Bar Court as follows:

24   **I.  ORDER REQUESTED**

25   The Member moves the Court to extend compliance to April 30, 2020 on the following

27   orders:

28

_\*Thomas O. Gillis is referred herein as "Member (please excuse the third person references to "Member)._

# ADDENDUM C

1. The two year suspension extended to begin April 30, 2020.

2. The State Bar California Rules of Court 9.20 compliance be completed by Member on April 30, 2020.

3. The initial meeting to the Probation Department be completed by May 15, 2020 and scheduled by the Member by April 15, 2020.

4. The deadline for the first report to probation be extended to May 10, 2020 and cover the period of January 1, 2020 through April 30, 2020.

## II. BACKGROUND OF MEMBER AND HIS PRESENT LAW PRACTICE

### (A) The Member

1. Member is 79 years old.  Member was graduated from Hastings in 1967 has been continually practicing for 52 years, except for 5 years when he was a Workers Compensation Judge.  His only prior discipline was a six month suspension as a result of an ill advised sale of Member's home to a client in 1993, 26 years ago.  The Member did not cheat the client, but the client didn't hire an attorney to protect her and the Bar maintained that the Member should have made sure she had an attorney to review the sale.

2. The present suspension is largely a result of the member not sufficiently supervising an employee who defrauded clients.  That employee has been charged with fraud and is pending trial.  The Member was not implicated by the police in any malfeasance.  A detective of the Modesto Police Department devoted a year to the fraud of Member's employee.

**(B) <u>The Member's Practice</u>**

3. The member, a sole practitioner operates 5 offices. The Member's main office is in Modesto, California. Smaller offices are in Sacramento, Yuba City, Fresno and Visalia.

4. The Member only handles bankruptcy cases. At least 95% of his clients are Hispanic. All but one of Member's employees is Hispanic.

5. The Member has filed over 13,400 bankruptcy cases and may be the largest bankruptcy filer in California.

6. The Member currently has 517 active cases that are pending before the Bankruptcy Courts (see List, Exhibit A).

7. A substitution of attorney needs to be executed in those 517 cases, also <u>Rule 9.20</u> compliance documents need to be processed. In almost all of the 517 pending cases, clients are Spanish speaking. Many are unsophisticated field workers who need to be brought into the office to explain their choices and the transition required. They need personal handling, not a letter. Most will not understand, even if written in Spanish, unless they can have their questions answered in Spanish by the Member and his staff.

8. The Member has thirteen very skilled employees who have serviced Hispanic bankruptcy cases for 10 years. The Member also speaks Spanish.

9. All pending cases are in good standing and are being serviced by Member.

10. The law practice is solvent and current with all tax obligations and employee salaries.

### III. THE MEMBER HAS BEEN DILIGENT IS TRYING TO TRANSFER OR SELL HIS PRACTICE

Anticipating the Supreme Court Ruling, Member wanted to retire, but desired to pass on his successful business to an attorney who would continue to service the Hispanic community. Toward that end, Member sought a buyer who would retain his highly skilled Hispanic staff who have been loyal helpers through the years. A large sale price or down payment was not demanded by Member. Although Member's practice is the envy of many practitioners, other bankruptcy attorneys were reluctant to buy the business because of various concerns:

(a) Possible liability from cases where Member's employee stole from clients.

(b) It's too big of a practice.

(c) They wanted to discharge my staff and rehire, which was a non starter for Member.

### IV. THE MEMBER HAS LOCATED AN ATTORNEY TO BUY THE PRACTICE AND IS IN THE PROCESS OF DRAWING PURCHASE CONTRACTS SO THAT SUBSTITUTION OF ATTORNEY FORMS CAN BE PROCESSED

11. Member has located a purchaser of this practice. His name is Todd Whitley, a member in good standing. Mr. Whitely is a bankruptcy attorney, and he plans to hire the Member's highly skilled staff. There is no down payment on the purchase price, only payments which will allow Member to retire.

12. Contracts are being prepared and examined. However, the Member and Mr. Whitely want to have the purchase documents examined by an attorney who practices before the State Bar to avoid any improprieties. The Member expects the final sale will take about 100 days because of the Rules of Personal Conduct, Rule 1.17 which require the clients get notice of transfer of not less than 90 days.

V.  **AN ORDERLY COMPLIANCE WITH RULE 9.20 WILL TAKE A REASONABLE AMOUNT OF TIME BECAUSE OF THE NUMBER OF CASES AND THE NATURE OF THE CLIENTS**

13. The Member has a good reputation in the bankruptcy community because he services Hispanics and is very careful to address their cases in person and in Spanish.  Most clients are unsophisticated.  Many are Fresno, Visalia and Delano field workers or other low income workers.  They are not the kind of clients where the Member can send a letter and trust the clients to take appropriate action to finish their case.  They are honest people, but many of them don't read well or understand the difficult concepts of bankruptcy.

14. The Member wants to bring each client into the office to explain the Rule 9.20 requirements, offer a substitution of attorney and allow the clients to meet the new owner of the business, unless the clients want to go elsewhere for completion of their case.  The name of the new business is Latino Law, a professional corporation.

15. Traditionally, many of the Hispanic community go to Mexico for Christmas. Appointments for to them need to be scheduled soon and probably arranged for January or February.

16. For an orderly transition that will protect the clients, the suspension needs to go out past the holidays and to April 30, 2020.

17. The Member estimates he can accomplish the substitutions and compliance with Rule 9.20 by April 30, 2020.

IV.  **DESCRIPTION OF MEMBER'S FILED CASES THAT ARE PRESENTLY PENDING BEFORE THE BANKRUPTCY COURT**

Member's practice is limited to bankruptcy cases.

Since the Court may not be familiar with bankruptcy cases, below is a brief general

explanation of the different types of bankruptcy filings:

1.  *"Chapter 7" is a bankruptcy where debtor discharges all unsecured bills and retains only certain "grub stake" assets. That code allows a debtor to retain property and make a fresh start. The debtor goes to one "meeting of creditors" and receives a final discharge of his/her debt. Case closure is 90 days after filing.*

2.  *"Chapter 13" is another kind of bankruptcy usually called "bill payer's plan". In Chapter 13, the debtor discharges his/her unsecured bills and keeps his/her "grub stake" property, i.e. property like a car, clothes and furniture needed to start over. Debtor pays only a percentage of their bills in monthly payments over 3 to 5 years. The Chapter 13 case can stay open for 3 to 5 years. Many times, debtor is saving his/her home by paying an arrearage over five years, in monthly payments.*

3.  *There are other bankruptcies, but the Member is not presently doing Chapter 9, 11 or 12.*

With this explanation of bankruptcy in mind, Member informs the Court that he has 517

pending cases (see listing of pending cases, Exhibit A). Of the list, there are 359 cases of

Chapter 13 where payment plans have been approved, but the cases are open for 3 to 5 years

while payments are being made. The attorney on the Chapter 13 case has to continue to service

those cases until the case closes. Sometimes motions or responses are needed after the plan is

confirmed. For example, if debtor is delinquent with post petition plan payments, the attorney

must file an opposition and appear in Court to oppose a motion by the Trustee to dismiss the

case.

Additionally there are 48 Chapter 13 cases that have been filed and are set for confirmation

hearings requesting an order approving a proposed Chapter 13 repayment plan. These cases each

need considerable legal work in the nature of motions, oppositions and amendments in order to

achieve confirmation of their plan of payment. These cases require time sensitive legal work.

Finally, there are 110 Chapter 7 cases that are filed and need little servicing unless the "first meeting of creditors" has not yet been held; in which case, the attorney must appear and guide the client through that hearing.

In summary, Member can adequately service these cases if allowed until April 30, 2020 to transition these cases to purchaser of Member's firm, or is allowed time for Member to refer the clients to other attorneys.

Member's suspension is presently set for December 2019. To transition these clients by that date and comply with Rule 9.20 is virtually impossible.

## V. **IT WOULD BE DIFFICULT OR IMPOSSIBLE FOR THE STATE BAR TO SUCCESSFULLY TAKE OVER THIS BANKRUPTCY PRACTICE IF MEMBER IS NOT GIVEN TIME TO COMPLY WITH HIS RULE 9.20 OBLIGATIONS AND HAS TO CLOSE BUSINESS ON NOVEMBER 30, 2019**

18. The member has been rushing to service all of the cases in progress. For example, on 11/12/19, Member appeared for first Meeting of Creditors on 21 cases in Fresno.

19. If the Member is rushed and cannot get the new owner in place before his suspension, the State Bar will not be able to find attorneys to take over this large practice in time to protect clients with the pending cases with no income to pay staff, the workers will go elsewhere. There are no skilled local bankruptcy attorneys who can handle Member's practice and keep their own practice going. The Bankruptcy Bar is very small, in number of members. All are busy with their own cases.

20. In the twelve months since the suspension stipulation was signed, the member has maintained and serviced existing clients without complaints from Court or from clients. There is no risk of danger to the public in extending the suspension to April 30, 2020. The Member intends to continue to diligently protect his clients pending

the transition.  The Member is now working six days a week and has hired another attorney to help.

## VI. THE MEMBER HAS SUFFERED RECENT SERIOUS HEALTH PROBLEMS THAT MAKES IT DIFFICULT TO WORK THE EXTRA HOURS REQUIRED TO COMPLY WITH THE SUSPENSION ORDER

21. The Member is now 79 years old and mentally, still a competent Bankruptcy Attorney.  He was near the top of his class at Hastings.  He received the second highest grade out of 500 students from Dean William Prosser who taught torts as one of the "65 Club" of retired legal giants that taught at Hastings in the late 60's.

22. In the 13,400 bankruptcy cases handled by Member, not one has been denied a discharge in bankruptcy.  The member is very proud of his career and has helped countless poor Hispanic families escape foreclosure and debt they could not pay.  He has successfully handled the most difficult of cases.

23. Member had been in reasonably good health before he signed the stipulation for suspension.  This suspension, after 52 years of practice, caused Member great stress.

24. After signing the stipulation for suspension in December 2018, in the early part of 2019, Member had a stroke and had to be transported by ambulance for a three day hospitalization (see Exhibit B, medical records).  Member consulted a heart specialist and after testing, found he also had a heart attack (see Exhibit C).

25. To compound the stroke and heart attack, Member's chronic lung problem worsened.  Member has a chronic lung problem called "Hypersensitive pneumonitis" that has dropped his lung capacity to dangerous levels and resulted in episodes of coughing.

(1) Delay the effective date of Member's suspension from practice so the active suspension shall commence on April 30, 2020, Rule 9.10(e).

(2) Extend the time within which the member must comply with Rule 9.20 of the California Rules of Court.

(3) Extend the time for Member to call to and schedule an initial meeting with his probation officer at the State Bar to April 15, 2020.

(4) Extend the time for Member's initial report to the Office of Probation to April 30, 2020.

(5) And for such other modifications as the Court deems just.

Dated: November 15, 2019                          Respectfully Submitted,

                                                  _Thomas O. Gillis_
                                                  Thomas O. Gillis, In Pro Per

1  THOMAS O. GILLIS, SBN 40186
   ATTORNEY AT LAW
2  1006 H STREET, SUITE 3
3  MODESTO, CALIFORNIA  95354
   TEL (209)575-1153
4  FAX (866)750-5566
   EMAIL: TG341@gillislaw.us
5
6  Attorneys for Member
   THOMAS O. GILLIS, In pro per
7
                            STATE BAR COURT
8
                HEARING DEPARTMENT – SAN FRANCISCO
9
10
   In the Matter of:                          Case Nos.  16-O-10780
11
12                                                       17-O-02624
   THOMAS OSCAR GILLIS
13 No. 40186,                                           17-O-04790

14 A Member of the State Bar
                                              **SUPPORTING
15                                            EXHIBITS**
16
17
18
19
20
21      Exhibit F:     Declaration of Member supporting the Motion
22
23
24
25
26
27
28

                            Page 1 of 1

1  THOMAS O. GILLIS, SBN 40186
2  ATTORNEY AT LAW
   1006 H STREET, SUITE 3
3  MODESTO, CALIFORNIA  95354
   TEL (209)575-1153
4  FAX (866)750-5566
   EMAIL: TG341@gillislaw.us
5
6  Attorneys for Member
   THOMAS O. GILLIS, In pro per
7
                    STATE BAR COURT
8
         HEARING DEPARTMENT – SAN FRANCISCO
9
10
   In the Matter of:                    Case Nos.  16-O-10780
11
                                                   17-O-02624
12 THOMAS OSCAR GILLIS
   No. 40186,                                      17-O-04790
13
14 A Member of the State Bar.
                                        **DECLARATION OF MEMBER**
15                                      **IN SUPPORT OF AMENDED**
                                        **MOTION OF MEMBER FOR AN**
16                                      **ORDER OF THE STATE BAR**
                                        **SETTING OR EXTENDING THE**
17                                      **TIME WHEN THE ACTUAL**
                                        **TWO YEAR SUSPENSION OF**
18                                      **THE MEMBER'S LICENSE**
                                        **SHALL COMMENCE**
19
20
21
22
23    I, Thomas O. Gillis, hereby declare as follows:
24
25       1.  I am 79 years old.  I graduated from Hastings in 1967 have been continually

26           practicing for 52 years, except for 5 years when I was a Workers Compensation

27           Judge.  My only prior discipline was a six month suspension from the ill advised sale

28           of my home to a client in 1993, 26 years ago. I did not cheat the client, but the client

                              Page 1 of 7

didn't hire an attorney to protect her and the Bar through I should have made sure she had an attorney to review the sale.

2. The present suspension is largely a result of me not sufficiently supervising an employee who defrauded clients. That employee has been charged with fraud and is pending trial. I was not implicated by the police in any malfeasance. A detective of the Modesto Police Department devoted a year to the fraud of my employee.

3. I am a sole practitioner who operates 5 offices. The main office is in Modesto, California. Smaller offices are in Sacramento, Yuba City, Fresno and Visalia.

4. I only handle bankruptcy cases and at least 95% of my clients are Hispanic. All but one of my employees is Hispanic.

5. I have filed over 13,400 bankruptcy cases and may be the largest bankruptcy filer in California.

6. I currently have 517 active cases that are pending before the Bankruptcy Courts (see List, Exhibit A).

7. A substitution of attorney needs to be executed in those 517 cases. Rule 9.20 compliance documents need to be processed. In almost all of the 517 pending cases, clients are Spanish speaking. Many are unsophisticated field workers who need to be brought into the office to explain their choices and the transition. They need personal handling, not a letter. Most will not understand, even if written in Spanish unless they can have their questions answered in Spanish by me and my staff.

8. I have thirteen very skilled employees who have serviced bankruptcy cases for 10 years. I also speak Spanish.

9. All pending cases are in good standing and are being serviced by me.

10. The law practice is solvent and current with all tax obligations and employee salaries.

11. I wanted to retire but desired to pass on my successful business to an attorney who will continue to service the Hispanic community.  Toward that end, I sought a buyer who would retain my highly skilled Hispanic staff who have been loyal helpers through the years.  A large sale price or down payment was not demanded by me.  Although my practice is the envy of many practitioners, other bankruptcy attorneys were reluctant to buy the business because of various concerns:

    a.  Possible liability from cases where my employee stole from clients.

    b.  It's too big of a practice.

    c.  They wanted to discharge my staff and rehire, which was a non starter for me.

12. I have located a purchaser for my practice.  His name is Todd Whitley, a member in good standing.  Mr. Whitely is a bankruptcy attorney, and he plans to hire my highly skilled staff.  There is no down payment on the purchase price, only payments which will allow me to retire.

13. Contracts are being prepared and examined.  However, Mr. Whitely and I want to have the purchase documents examined by an attorney who practices before the State Bar.  I expect the final sale will take about 100 days because of the Rules of personal conduct, Rule 1.17 which requires the clients to get notice of transfer not less than 90 days.

14. I have a good reputation in the bankruptcy community because I service Hispanics and I am very careful to address their cases in person and in Spanish.  Most clients are unsophisticated.  Many are Fresno, Visalia and Delano field workers or other low income workers.  They are not the kind of clients where I can send a letter and trust

the clients to take appropriate action to finish their case Many of them don't read well or understand the difficult concepts of bankruptcy.

15. I want to bring each client into the office to explain the Rule 9.20 requirements, offer a substitution of attorney and allow the clients to meet the new owner of the business unless the clients want to go elsewhere for completion of their case. The name of the new business is Latino Law, a professional corporation.

16. Traditionally, many of the Hispanic community go to Mexico for Christmas. Appointments for them need to be scheduled soon and probably arranged for January or February.

17. I estimate I can accomplish the substitutions and compliance with Rule 9.20 by April 30, 2020.

18. I have been rushing to service all of the cases in progress. For example on 11/12/19 I appeared for hearings on 21 cases in Fresno.

19. If I am rushed and cannot get the new owner in place before my suspension the State Bar will not be able to find attorneys to take over this large practice in time to protect the pending cases with no income to pay staff, the workers will go elsewhere. There are no skilled local bankruptcy attorneys who can handle my practice and keep their own practice going. The Bankruptcy Bar is very small, in number of members. All are busy with their own cases.

20. In the twelve months since the suspension stipulation was signed, I have maintained and serviced existing clients without complaints from Court or clients. There is no risk of danger to the public in extending the suspension to April 30, 2020. I intend to

continue to diligently protect my clients pending the transition. I am now working six days a week and I have hired another attorney to help.

21. I am now 79 years old but mentally still a competent Bankruptcy Attorney. I was near the top of my class at Hastings. I received the second highest grade out of 500 students from Dean William Prosser who taught torts as one of the "65 Club" of retired legal giants that taught at Hastings in the late 60's.

22. In the 13,400 bankruptcy cases handled by me, not one has been denied a discharge in bankruptcy. I am very proud of my career and I have helped countless poor Hispanic families escape foreclosure and debt they could not pay. I have successfully handled the most difficult of bankruptcy cases.

23. I have been in reasonably good health before I signed the stipulation for suspension. This suspension, after 52 years of practice, has caused me great stress.

24. After signing the stipulation for suspension in December 2018, in the early part of 2019, I had a stroke and had to be transported by ambulance for a three day hospitalization (see Exhibit B, medical records). I consulted a heart specialist and after testing and found I had also had a heart attack (see Exhibit C).

25. To compound the stroke and heart attack, my chronic lung problem worsened. I had a chronic lung problem called "Hypersensitive pneumonitis" that dropped my lung capacity to dangerous levels and resulted in episodes of coughing.

26. On September 6, 2019, my lungs were tested and had fallen to 34% capacity (see Medical Record, Exhibit D). I was coughing on any exertion, even walking 50 feet.

27. Dr. Tanaka put me on a heavy dose of Cortizone pills and an immunity suppressor to slow down further lung scarring. The Cortizone is a miracle drug, but causes weight gain, loss of sleep, loss of bone mass and other seriously side effects.

28. A recent test on October 7, 2019, showed improvement to my lung capacity and indicated I may recover. I am being tapered off of Cortizone in the following months (See Exhibit D).

29. As if this isn't enough, about three weeks ago I sustained a compression fracture of a Thoracic Vertebrae (see Exhibit E). That compression fracture is painful and makes sleep difficult.

30. Because of these recent medical problems, I need extra time to accomplish the things that need to be done to protect the clients during my suspension and to comply with Rule 9.20. I also request the initial meeting and reporting, provided for in the stipulation, be rescheduled so that I can arrange a meeting with probation on or before April 15, 2020.


      I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Dated: November 15, 2019
At Modesto, California.

Thomas O. Gillis

FILED

NOV 27 2019

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

**STATE BAR COURT OF CALIFORNIA**

**REVIEW DEPARTMENT**

**En Banc**

| | | |
|---|---|---|
| In the Matter of | ) | 16-O-10780 |
| | ) | |
| THOMAS OSCAR GILLIS, | ) | ORDER |
| | ) | |
| State Bar No. 40186. | ) | |
| | ) | |

On November 1, 2019, the California Supreme Court issued its order of discipline in this case, including that respondent Thomas Oscar Gillis be actually suspended for at least two years, effective December 1, 2019.

On November 13, 2019, respondent filed a motion to delay or stay the actual suspension until January 31, 2020, asserting he has multiple cases pending in the bankruptcy court. On November 18, 2019, respondent filed an amended motion seeking to delay or stay the actual suspension until April 30, 2020.

On November 20, 2019, the Office of Chief Trial Counsel of the State Bar (OCTC) filed a response to respondent's motions indicating that they did not oppose a short delay of respondent's suspension, but that an extension to April 30, 2020 was too long.

For good cause appearing, and in view of OCTC's non-opposition to a short delay of respondent's suspension, respondent's motion to delay his suspension is granted. (Rules Proc. of State Bar, rule 5.162 (D).) His suspension is hereby stayed effective upon the filing of this order and until January 31, 2020. Respondent must notify his clients and the tribunals within 5 days of

# ADDENDUM D

this order of his impending suspension, and also inform OCTC within 10 days thereafter that he has completed these notifications.

      In light of the above order, respondent's ex parte motion to advance the hearing of the motion for an extension is denied as moot.

**HONN**

———————————————————————
Acting Presiding Judge

## CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Court Specialist of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on November 27, 2019, I deposited a true copy of the following document(s):

ORDER FILED NOVEMBER 27, 2019

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

THOMAS OSCAR GILLIS
THOMAS O. GILLIS, ATTORNEY
1006 H ST., STE. 3
MODESTO, CA 95354-2384

☒ courtesy copy, by email, addressed as follows:

THOMAS OSCAR GILLIS at tg341@gillislaw.us

DANIELLE A. LEE at Danielle.Lee@calbar.ca.gov

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

Danielle A. Lee, Office of Chief Trial Counsel, San Francisco

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on November 27, 2019.

Mel Zavala
Court Specialist
State Bar Court

THOMAS O. GILLIS, SBN 40186
ATTORNEY AT LAW
1006 H STREET, SUITE 3
MODESTO, CALIFORNIA 95354
TEL (209)575-1153
FAX (866)750-5566
EMAIL: TG341@gillislaw.us

Attorneys for Member
THOMAS O. GILLIS, In pro per

**FILED**

JAN 2 2 2020

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

### STATE BAR OF CALIFORNIA
### REVIEW DEPARTMENT

In the Matter of:

THOMAS OSCAR GILLIS
No. 40186,

A Member of the State Bar

Case Nos. 16-O-10780

17-O-02624

17-O-04790

### MOTION OF MEMBER THOMAS O. GILLIS FOR MODIFICATION
### OF THE ORDER OF ACTUAL SUSPENSION NOW SET FOR JANUARY 31ST, 2020

#### I.      PROCEDURAL BACKGROUND

1. The Supreme Court approved the stipulation of the parties on November 1st, 2019. In relevant part it ordered a two-year active suspension.

2. The member* on November 18th, 2019 filed a motion to extend the active suspension effective date due to the illness of the member and the number of active cases (over 500) that had to be handed off to another attorney to protect the client's case.

_____

*Please excuse the refence to member as a third party. Member is Thomas O. Gillis.

# ADDENDUM E

3. The State Bar filed a limited response agreeing to an extension but requested that it not be 90 days as requested.

4. On November 27th, 2019, the Review Department granted the motion but shortened the 90 days requested to 60 days and required that all clients and courts be noticed of the new date of suspension. The active suspension is now to commence January 31st, 2020.

5. The member sent the notices to clients and courts as ordered by the Review Court.

6. On or before December 31st, 2019, the member complied with the provision of <u>Rule 9.20</u>, sending certified mail to clients, counsel and the courts, and filed the required Proof of Compliance by January 10th, 2020 with the State Bar Court. Also, the member filed a timely status report with his probation officer.

7. Member has complied with all requirements of probation to the present date. The member is in good standing with his probation and has registered to take the ethics examination and plans to successfully complete his probation as ordered.

8. Member plans to close his office after the suspension date.

9. Member has protected his clients to date by appearing on motions in their cases as needed.

## II.  UNFORESEEN CIRCUMSTANCES DICTATE THAT MEMBER RELUCTANTLY AGAIN REQUEST RELIEF FROM THE REVIEW COURT TO FULLY PROTECT THE CLIENTS

### a.  A Brief Description of Member's Law Practice, Historically

10. Member was graduated from University of California, San Francisco (Hastings Law School) in 1966 near the top of his class. He was admitted to practice in 1967, 53

years ago. He has practiced all kinds of civil and criminal law and was a Workers'
Compensation Judge.

11. During the 2008 downturn, member, who speaks Spanish, began taking only Hispanic
bankruptcy clients because no other bankruptcy attorney had the inclination or
capacity to handle Hispanic clients, most of who did not speak English. Member's
practice grew and at one time he had forty employees, mostly all Hispanic.

12. Member advertised on Hispanic radio and television. He handled cases in Central and
Northern California from Bakersfield to Redding. He is proud to have filed over
13,000 cases. He is well known and respected by the Hispanic Community in
northern California. Very few firms handle Hispanic clients who do not speak
English. Member believes he may be the top filer of bankruptcy cases in California.
Of the 13,000 cases filed, member does not recall a case where a client was denied a
discharge of their debts due to the malfeasance of the client or member.

### b.  Member's Present Practice

13. Presently, member's practice is active but only employs 12 workers, all but one
Hispanic. All have been with member doing only bankruptcy for 12 years. The staff is
special and not replaceable.

14. Bankruptcy is a small community of lawyers; most are elderly and only have a
secretary. Some of the best attorneys do not even have a secretary or any employees.

### III.  WHY WAS MEMBER SUSPENDED

15. Member serviced all his cases. Unfortunately, a key employee began stealing from
and defrauding vulnerable Hispanic clients. Member did not catch him until he quit.
Clients who were defrauded came to the office with stories of the fraud by this

employee. Member turned the employee into the police and the U.S. Trustee urging the FBI to investigate. Finally, 22 felony counts have been filed against the employee in Stanislaus County.

16. Member was suspended for not adequately supervising the employee. The employee was very sly meeting vulnerable clients at their homes and at members office at 5 a.m. Member does feel foolish for not catching him sooner. A detective investigated the employee daily with the help of member's office for a year. Member was not implicated in any theft or dishonesty.

## IV.     MEMBER TRIED TO TAKE STEPS TO HAND OFF HIS PRACTICE BEFORE HIS SUSPENSION, BUT HAD ACUTE AND SERIOUS HEALTH PROBLEMS THAT LIMITED HIS EFFORTS

17. Shortly after agreeing to the suspension, possibly from stress, Member had a stroke and a heart attack and was hospitalized. He also had a thoracic compression fracture on the spine about six weeks ago (see Exhibits B-E).

18. After partially recovering, Member contacted many local attorneys attempting to get someone to take over the practice. Some were interested but were to small to handle the volume.

19. Member tried to get someone to take over the profitable practice and to keep his employees, who are needed to process the volume.

20. Most attorneys were too small, too old, or wary of State Bar problems that might arise from cases that were previously filed by member.

21. Finally, about two months ago, member found a bankruptcy lawyer, Todd Whitely, willing to take the practice. Member paid the lawyer a large salary for four weeks and

trained him. Member and the replacement attorney began working on substitutions of attorney to protect ongoing cases.

22. Unfortunately, the replacement attorney's new wife insisted he quit. He abruptly quit. He now wants to be a realtor.

23. In a panic, member contacted an old friend who is an established bankruptcy attorney, Mark Hannon. Mr. Hannon has agreed to substitute in on member's active cases and hire much of member's staff to assist him with Spanish speaking clients. As a n inducement, Member agreed to stay on for at least a year to help with office work, research, preliminary preparation of motions and responses for chapter 13 clients whose cases are pending.

24. As soon as member recovered from pneumonia and the compression fracture, member and his staff started calling his clients to get substitutions of attorney processed to let Mark Hannon take over the cases. However, there are about 481 cases and many of the clients were gone to Mexico at Christmas. To date, Member has executed substitutions of attorney in 120 cases. Member has four Hispanic workers devoted just to contacting clients to get them to sign substitutions of attorney. It takes time. Many clients are field workers and only speak Spanish.

25. It took six employees, long hours and weekends to get out the certified letters required by Rule 9.20. This delayed the substitution process.

26. Contacting the clients and processing the substitutions of attorney for 481 clients to sign is a time-consuming task, even for multiple employees.

27. Member realizes that it cannot be finished by his suspension date of January 31st, 2020. There are only nine working days left, as of the date of this motion.

## V.    WHY MEMBER HAS TO SUBSTITUTE A NEW LAWYER IN HIS CHAPTER 13 CASES

28. Upon a member's suspension, the State Bar does not require the member to find a new lawyer for pending cases. However, the Chapter 13 pending cases are different and need an attorney to protect the client for the duration of the plan, up to 60 months. Member feels responsible for the clients and while he will close his office, member wants to make sure that the clients that trusted him are served, not abandoned.

29. Chapter 13 is commonly called a "bill payers" plan. A debtor proposes a "plan" to repay part or all of his debts over a 36 to 60 month monthly payment. Many debtors save their house or automobile by making monthly payments, protected from creditors by a federal restraining order.

30. The main job of the lawyer is to prepare bankruptcy schedules, propose an appropriate plan and follow the case through confirmation of the plan by the Court.

31. However, after confirmation, an attorney needs to be available in case the plan needs modifying, or the debtor gets a motion to dismiss for missing payments. The attorney opposes the motion and confers with the clients to arrive at a legal solution to this post confirmation problem.

32. Most of the time, the confirmed plans proceed to final discharge without a problem, but some require legal work.

33. In the case at bar, member presently is representing clients in 481 cases where a plan has been confirmed and the client is making plan payments for 36 to 60 months.

34. Accordingly, member needs to hand over these 481 cases to a new attorney so those clients can be protected until discharge is reached.

## VI.   IT WOULD BE DIFFICULT OR IMPOSSIBLE FOR THE STATE BAR TO SUCCESSFULLY TAKE OVER THIS BANKRUPTCY PRACTICE IF MEMBER IS NOT GIVEN TIME TO GET THE NEW ATTORNEY IN PLACE AND HAS TO CLOSE BUSINESS ON JANUARY 31ST, 2020

35. The member has been rushing to service all of the cases in progress.  For example, on 11/12/19, Member appeared for first Meeting of Creditors on 21 cases in Fresno and Sacramento; 10 cases on November 19th; 13 cases on November 20th; 8 cases on December 10th ; 13 cases on December 19th; 9 cases on December 23rd; 18 cases on January 6th; and 7 cases on January 16th.

36. If the Member is rushed and cannot get the new owner in place before his suspension, the State Bar will not be able to find a bankruptcy attorney to take over this large practice in time to protect clients with the pending cases.  There are no skilled local bankruptcy attorneys who can handle Member's practice and keep their own practice going.  The Bankruptcy Bar is very small, in number of members.  All are busy with their own cases.

37. In the last ten years, the member has maintained and serviced existing clients without complaints from Court or from clients.  There is no risk of danger to the public in extending the suspension to March 15th, 2020.  The Member intends to continue to diligently protect his clients pending the transition.  The Member is now working six days a week and has hired an extra Hispanic worker to process substitutions of attorney for Mark Hannon.

**VII.　THE BANKRUPTCY COURT HAS BECOME AWARE OF THE PROBLEM FOR CLIENTS AND HAS SET A SPECIAL, UNPRECEDENTED, IN BLANC HEARING TO ADDRESS THE PROBLEM OF PROTECTING THE CLIENTS WITH CASES IN PROGRESS**

38. Member has been contacting the standing Chapter 13 U.S. Trustee trying to arrive at a plan to service the 481 confirmed plans. The trustees have only experienced suspensions involving few cases. Those cases were handed over to a local attorney without incident.

39. The Bankruptcy Judges are concerned for the clients, as is the member. The Bankruptcy Judges set an unprecedented O.S.C. to set in blanc with the presence of the trustee and member to try to arrive at a solution that will protect the clients (see Exhibit G).

40. Member welcomes the input of the parties and will appear. Member plans to propose that Mark Hannon be allowed in sixty days to substitute in on all cases to protect the clients. However, with no funds to pay staff, substitution in 481 cases may not be possible.

**VIII.　THE CLIENTS CAN BE PROTECTED IF THIS COURT WILL ALLOW THE MEMBER TO PROCESS THE SUBSTITUTIONS OF ATTORNEY**

41. Member cannot physically get all the substitutions of attorney forms in place by the effective date of his suspension, in nine working days.

42. Aggravating the situation, member was diagnosed with pneumonia on January 11, 2020 and had to stay in bed for seven days.

43. If member has to close his office by January 31st, 2020, there will be no funds to pay employees' salaries of $12,000 per week.

44. Because of these urgent and unexpected problems, member prays the Court grant him a 45-day extension to enable him to get a new lawyer in place to serve the clients with pending matters. He will then close his office and help Mr. Hannon protect the clients until he can handle it on his own. No further extensions will be applied for by member.

Dated: January 20, 2020                              May it please the Court,

                                                     _____
                                                     Thomas O. Gillis, In Pro Per

THOMAS O. GILLIS, SBN 40186
ATTORNEY AT LAW
1006 H STREET, SUITE 3
MODESTO, CALIFORNIA 95354
TEL (209)575-1153
FAX (866)750-5566
EMAIL: TG341@gillislaw.us

Attorneys for Member
THOMAS O. GILLIS, In pro per

STATE BAR OF CALIFORNIA
REVIEW DEPARTMENT

In the Matter of:

THOMAS OSCAR GILLIS
No. 40186,

A Member of the State Bar

Case Nos. 16-O-10780

17-O-02624

17-O-04790

## DECLARATION OF MEMBER THOMAS O. GILLIS IN SUPPORT OF MOTION FOR MODIFICATION OF THE ORDER OF ACTUAL SUSPENSION NOW SET FOR JANUARY 31ST, 2020

I, Thomas O. Gillis, declare as follows:

### I.      PROCEDURAL BACKGROUND

1. The Supreme Court approved the stipulation of the parties on November 1st, 2019. In relevant part it ordered a two-year active suspension.

2. The member* on November 18th, 2019 filed a motion to extend the active suspension effective date due to the illness of the member and the number of active cases (over 500) that had to be handed off to another attorney to protect the client's case.

*Please excuse the refence to member as a third party. Member is Thomas O. Gillis.

3. The State Bar filed a limited response agreeing to an extension but requested that it not be 90 days as requested.

4. On November 27th, 2019, the Review Department granted the motion but shortened the 90 days requested to 60 days and required that all clients and courts be noticed of the new date of suspension. The active suspension is now to commence January 31st, 2020.

5. The member sent the notices to clients and courts as ordered by the Review Court.

6. On or before December 31st, 2019, the member complied with the provision of <u>Rule 9.20</u>, sending certified mail to clients, counsel and the courts, and filed the required Proof of Compliance by January 10th, 2020 with the State Bar Court. Also, the member filed a timely status report with his probation officer.

7. Member has complied with all requirements of probation to the present date. The member is in good standing with his probation and has registered to take the ethics examination and plans to successfully complete his probation as ordered.

8. Member plans to close his office after the suspension date.

9. Member has protected his clients to date by appearing on motions in their cases as needed.

## II. <u>UNFORESEEN CIRCUMSTANCES DICTATE THAT MEMBER RELUCTANTLY AGAIN REQUEST RELIEF FROM THE REVIEW COURT TO FULLY PROTECT THE CLIENTS</u>

### <u>a.</u> <u>A Brief Description of Member's Law Practice, Historically</u>

10. Member was graduated from University of California, San Francisco (Hastings Law School) in 1966 near the top of his class. He was admitted to practice in 1967, 53

years ago. He has practiced all kinds of civil and criminal law and was a Workers' Compensation Judge.

11. During the 2008 downturn, member, who speaks Spanish, began taking only Hispanic bankruptcy clients because no other bankruptcy attorney had the inclination or capacity to handle Hispanic clients, most of who did not speak English. Member's practice grew and at one time he had forty employees, mostly all Hispanic.

12. Member advertised on Hispanic radio and television. He handled cases in Central and Northern California from Bakersfield to Redding. He is proud to have filed over 13,000 cases. He is well known and respected by the Hispanic Community in northern California. Very few firms handle Hispanic clients who do not speak English. Member believes he may be the top filer of bankruptcy cases in California. Of the 13,000 cases filed, member does not recall a case where a client was denied a discharge of their debts due to the malfeasance of the client or member.

### b. Member's Present Practice

13. Presently, member's practice is active but only employs 12 workers, all but one Hispanic. All have been with member doing only bankruptcy for 12 years. The staff is special and not replaceable.

14. Bankruptcy is a small community of lawyers; most are elderly and only have a secretary. Some of the best attorneys do not even have a secretary or any employees.

### III.   WHY WAS MEMBER SUSPENDED

15. Member serviced all his cases. Unfortunately, a key employee began stealing from and defrauding vulnerable Hispanic clients. Member did not catch him until he quit. Clients who were defrauded came to the office with stories of the fraud by this

employee. Member turned the employee into the police and the U.S. Trustee urging the FBI to investigate. Finally, 22 felony counts have been filed against the employee in Stanislaus County.

16. Member was suspended for not adequately supervising the employee. The employee was very sly meeting vulnerable clients at their homes and at members office at 5 a.m. Member does feel foolish for not catching him sooner. A detective investigated the employee daily with the help of member's office for a year. Member was not implicated in any theft or dishonesty.

## IV.    MEMBER TRIED TO TAKE STEPS TO HAND OFF HIS PRACTICE BEFORE HIS SUSPENSION, BUT HAD ACUTE AND SERIOUS HEALTH PROBLEMS THAT LIMITED HIS EFFORTS

17. Shortly after agreeing to the suspension, possibly from stress, Member had a stroke and a heart attack and was hospitalized. He also had a thoracic compression fracture on the spine about six weeks ago (see Exhibits B-E).

18. After partially recovering, Member contacted many local attorneys attempting to get someone to take over the practice. Some were interested but were to small to handle the volume.

19. Member tried to get someone to take over the profitable practice and to keep his employees, who are needed to process the volume.

20. Most attorneys were too small, too old, or wary of State Bar problems that might arise from cases that were previously filed by member.

21. Finally, about two months ago, member found a bankruptcy lawyer, Todd Whitely, willing to take the practice. Member paid the lawyer a large salary for four weeks and

trained him. Member and the replacement attorney began working on substitutions of attorney to protect ongoing cases.

22. Unfortunately, the replacement attorney's new wife insisted he quit. He abruptly quit. He now wants to be a realtor.

23. In a panic, member contacted an old friend who is an established bankruptcy attorney, Mark Hannon. Mr. Hannon has agreed to substitute in on member's active cases and hire much of member's staff to assist him with Spanish speaking clients. As a n inducement, Member agreed to stay on for at least a year to help with office work, research, preliminary preparation of motions and responses for chapter 13 clients whose cases are pending.

24. As soon as member recovered from pneumonia and the compression fracture, member and his staff started calling his clients to get substitutions of attorney processed to let Mark Hannon take over the cases. However, there are about 481 cases and many of the clients were gone to Mexico at Christmas. To date, Member has executed substitutions of attorney in 120 cases. Member has four Hispanic workers devoted just to contacting clients to get them to sign substitutions of attorney. It takes time. Many clients are field workers and only speak Spanish.

25. It took six employees, long hours and weekends to get out the certified letters required by Rule 9.20. This delayed the substitution process.

26. Contacting the clients and processing the substitutions of attorney for 481 clients to sign is a time-consuming task, even for multiple employees.

27. Member realizes that it cannot be finished by his suspension date of January 31st, 2020. There are only nine working days left, as of the date of this motion.

## V.    <u>WHY MEMBER HAS TO SUBSTITUTE A NEW LAWYER IN HIS CHAPTER 13 CASES</u>

28. Upon a member's suspension, the State Bar does not require the member to find a new lawyer for pending cases. However, the Chapter 13 pending cases are different and need an attorney to protect the client for the duration of the plan, up to 60 months. Member feels responsible for the clients and while he will close his office, member wants to make sure that the clients that trusted him are served, not abandoned.

29. Chapter 13 is commonly called a "bill payers" plan. A debtor proposes a "plan" to repay part or all of his debts over a 36 to 60 month monthly payment. Many debtors save their house or automobile by making monthly payments, protected from creditors by a federal restraining order.

30. The main job of the lawyer is to prepare bankruptcy schedules, propose an appropriate plan and follow the case through confirmation of the plan by the Court.

31. However, after confirmation, an attorney needs to be available in case the plan needs modifying, or the debtor gets a motion to dismiss for missing payments. The attorney opposes the motion and confers with the clients to arrive at a legal solution to this post confirmation problem.

32. Most of the time, the confirmed plans proceed to final discharge without a problem, but some require legal work.

33. In the case at bar, member presently is representing clients in 481 cases where a plan has been confirmed and the client is making plan payments for 36 to 60 months.

34. Accordingly, member needs to hand over these 481 cases to a new attorney so those clients can be protected until discharge is reached.

**VI.    IT WOULD BE DIFFICULT OR IMPOSSIBLE FOR THE STATE BAR
TO SUCCESSFULLY TAKE OVER THIS BANKRUPTCY PRACTICE IF
MEMBER IS NOT GIVEN TIME TO GET THE NEW ATTORNEY IN
PLACE AND HAS TO CLOSE BUSINESS ON JANUARY 31ST, 2020**

35. The member has been rushing to service all of the cases in progress.  For example, on
11/12/19, Member appeared for first Meeting of Creditors on 21 cases in Fresno and
Sacramento; 10 cases on November 19th; 13 cases on November 20th; 8 cases on
December 10th ; 13 cases on December 19th; 9 cases on December 23rd; 18 cases on
January 6th; and 7 cases on January 16th.

36. If the Member is rushed and cannot get the new owner in place before his suspension,
the State Bar will not be able to find a bankruptcy attorney to take over this large
practice in time to protect clients with the pending cases.  There are no skilled local
bankruptcy attorneys who can handle Member's practice and keep their own practice
going.  The Bankruptcy Bar is very small, in number of members.  All are busy with
their own cases.

37. In the last ten years, the member has maintained and serviced existing clients without
complaints from Court or from clients.  There is no risk of danger to the public in
extending the suspension to March 15th, 2020.  The Member intends to continue to
diligently protect his clients pending the transition.  The Member is now working six
days a week and has hired an extra Hispanic worker to process substitutions of
attorney for Mark Hannon. See Exhibit H for work to be done as scheduled by
member's secretary.

**VII.  THE BANKRUPTCY COURT HAS BECOME AWARE OF THE PROBLEM FOR CLIENTS AND HAS SET A SPECIAL, UNPRECEDENTED, IN BLANC HEARING TO ADDRESS THE PROBLEM OF PROTECTING THE CLIENTS WITH CASES IN PROGRESS**

38. Member has been contacting the standing Chapter 13 U.S. Trustee trying to arrive at a plan to service the 481 confirmed plans. The trustees have only experienced suspensions involving few cases. Those cases were handed over to a local attorney without incident.

39. The Bankruptcy Judges are concerned for the clients, as is the member. The Bankruptcy Judges set an unprecedented O.S.C. to set in blanc with the presence of the trustee and member to try to arrive at a solution that will protect the clients (see Exhibit G).

40. Member welcomes the input of the parties and will appear. Member plans to propose that Mark Hannon be allowed in sixty days to substitute in on all cases to protect the clients. However, with no funds to pay staff, substitution in 481 cases may not be possible.

**VIII.  THE CLIENTS CAN BE PROTECTED IF THIS COURT WILL ALLOW THE MEMBER TO PROCESS THE SUBSTITUTIONS OF ATTORNEY**

41. Member cannot physically get all the substitutions of attorney forms in place by the effective date of his suspension, in nine working days.

42. Aggravating the situation, member was diagnosed with pneumonia on January 11, 2020 and had to stay in bed for seven days.

43. If member has to close his office by January 31st, 2020, there will be no funds to pay employees' salaries of $12,000 per week.

44. Because of these urgent and unexpected problems, member prays the Court grant him

a 45-day extension to enable him to get a new lawyer in place to serve the clients with

pending matters. He will then close his office and help Mr. Hannon protect the clients

until he can handle it on his own. No further extensions will be applied for by

member.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 21, 2020
At Modesto, Ca

Thomas O. Gillis,

**FILED**

**FEB - 7 2020**

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

## STATE BAR COURT OF CALIFORNIA

## REVIEW DEPARTMENT

### En Banc

| | | |
|---|---|---|
| In the Matter of | ) | 16-O-10780 |
| | ) | |
| THOMAS OSCAR GILLIS, | ) | ORDER |
| | ) | |
| State Bar No. 40186. | ) | |
| | ) | |

On November 1, 2019, the California Supreme Court issued its order of discipline in this case, including that respondent Thomas Oscar Gillis be actually suspended for at least two years, effective December 1, 2019.

On November 13, 2019, respondent filed a motion to delay or stay the actual suspension until January 31, 2020, asserting he has multiple cases pending in the bankruptcy court. On November 18, 2019, respondent filed an amended motion seeking to delay or stay the actual suspension until April 30, 2020. On November 20, 2019, the Office of Chief Trial Counsel of the State Bar (OCTC) filed a response to respondent's motions indicating that they did not oppose a short delay of respondent's suspension, but that an extension to April 30, 2020 was too long. Finding good cause, on November 27, 2019, we ordered respondent's suspension stayed until January 31, 2020.

On January 22, 2020, respondent filed a motion for modification of our order, stating that he still has multiple pending cases and has had health issues, and seeking a further extension of his suspension to March 15, 2020. On January 28, 2020, respondent filed a motion to advance

# ADDENDUM F

the matter. On January 30, 2020, OCTC filed an opposition to respondent's motion, stating that any additional extension would not be fruitful but providing that if the court granted respondent's motion, it should grant an extension to no later than February 28, 2020, and order respondent not to take on additional clients. On February 3, 2020, respondent filed a reply indicating he would comply with requests made by OCTC to file all substitutions of attorney by February 15, 2020, and not accept any new clients.

For good cause appearing, respondent's motion to delay his suspension is granted in part. (Rules Proc. of State Bar, rule 5.162 (D).) His suspension is hereby stayed effective upon filing of this order and until February 15, 2020. Respondent is ordered not to accept new clients during this period of stayed suspension. No further extensions are contemplated.

**PURCELL**
_____
Presiding Judge

## CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Court Specialist of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on February 7, 2020, I deposited a true copy of the following document(s):

ORDER FILED FEBRUARY 7, 2020

in a sealed envelope for collection and mailing on that date as follows:

☒　　by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

THOMAS OSCAR GILLIS
THOMAS O. GILLIS, ATTORNEY
1006 H ST., STE. 3
MODESTO, CA 95354-2384

☒　　courtesy copy, by email, addressed as follows:

THOMAS OSCAR GILLIS at tg341@gillislaw.us

DANIELLE ADORACION LEE at Danielle.Lee@calbar.ca.gov

☒　　by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

Danielle A. Lee, Office of Chief Trial Counsel, San Francisco

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on February 7, 2020.

Mel Zavala
Court Specialist
State Bar Court

| Case Number | Chapter | Debtors | Date Filed |
|---|---|---|---|
| 2020-10498 | 13 | Marcelino Elizanadro Hernandez and Natalie Carbajal Hernandez | 2/12/2020 |
| 2020-10340 | 13 | Arturo Garcia Chavez and Mayra Hernandez Moreno | 1/31/2020 |
| 2020-10314 | 13 | Sergio Carrillo Madrid and Elizabeth Rodriguez Magana | 1/30/2020 |
| 2020-10318 | 13 | Jose De Jesus Gonzalez and Italia E De Loza | 1/30/2020 |
| 2020-10298 | 13 | Napoleon Vazquez | 1/29/2020 |
| 2020-10299 | 13 | Manuel Adrian Dicochea | 1/29/2020 |
| 2020-10265 | 13 | Erica Alejandra Gomez | 1/27/2020 |
| 2020-10110 | 13 | Angel Ramon Diaz | 1/14/2020 |

| Case Number | Chapter | Debtors | Date Filed |
|---|---|---|---|
| 2020-90112 | 7 | Sati Santoshi Sen | 2/10/2020 |
| 2020-10405 | 7 | Andrea Magdaleno Avila | 2/5/2020 |
| 2020-10406 | 7 | Jeremias Dolores Lozano | 2/5/2020 |
| 2020-10407 | 7 | Jose Rosas Ochoa | 2/5/2020 |
| 2020-10408 | 7 | Carlos Antonio Hernandez | 2/5/2020 |
| 2020-10409 | 7 | Arturo Zepeta Perez and Berdine Louise Reyes | 2/5/2020 |
| 2020-10410 | 7 | Hilario Beltran Vasquez and Cecilia Vazquez | 2/5/2020 |
| 2020-10411 | 7 | Francisco G Gonzalez and Rosalva R Ramos | 2/5/2020 |
| 2020-10412 | 7 | Abel De La Trinidad Canales | 2/5/2020 |
| 2020-10413 | 7 | Juan Jose Nunez and Virginia Nunez | 2/5/2020 |
| 2020-10414 | 7 | Jose Rodriguez Robles | 2/5/2020 |
| 2020-10415 | 7 | Uriel Ramirez Ramirez and Veronica Ivonne Ramirez | 2/5/2020 |
| 2020-10416 | 7 | Nicolas Madrigal | 2/5/2020 |
| 2020-10417 | 7 | Jaime Ramirez Rivera and Maria Refugio De Rivera | 2/5/2020 |
| 2020-10418 | 7 | Luis Rosas Anzaldua and Rosie Esparza Anzaldua | 2/5/2020 |
| 2020-10419 | 7 | Shinder Kaur | 2/5/2020 |
| 2020-10420 | 7 | Angel Rodriguez Cruz | 2/5/2020 |
| 2020-10421 | 7 | Jesus Medina Haro and Norma A Medina | 2/5/2020 |
| 2020-10422 | 7 | David Guzman Serrano and Rita Vejar De Guzman | 2/5/2020 |

# ADDENDUM G

| 2020-10423 | 7 | Gricelda Sanchez Del Rio | 2/5/2020 |
|---|---|---|---|
| 2020-10424 | 7 | Elias Perez | 2/5/2020 |
| 2020-10425 | 7 | Maria Del Carmen Vazquez | 2/5/2020 |
| 2020-10426 | 7 | Nancy Elizabeth Cardenas | 2/5/2020 |
| 2020-10427 | 7 | Arnulfo Barrera Arteaga | 2/5/2020 |
| 2020-10428 | 7 | Carlos Romero Zarate and Norma Leticia Romero | 2/5/2020 |
| 2020-10429 | 7 | Jose Gustavo Piceno | 2/5/2020 |
| 2020-20618 | 7 | Ireneo Antonio Roman and Agustina Catalan | 2/4/2020 |
| 2020-20619 | 7 | Fernando Gallardo | 2/4/2020 |
| 2020-20620 | 7 | Gerardo Huerta Perez | 2/4/2020 |
| 2020-20621 | 7 | Jose Javier Aguilar | 2/4/2020 |
| 2020-20622 | 7 | Francisco Humberto Inzunza and Elsie Inzunza | 2/4/2020 |
| 2020-20623 | 7 | Manuel Antonio Bermudez | 2/4/2020 |
| 2020-20624 | 7 | Samuel Guzman Covarrubias and Cecilia Aguirre Villalobos | 2/4/2020 |
| 2020-20625 | 7 | Jorge Munoz | 2/4/2020 |
| 2020-20626 | 7 | Victor Manuel Martin | 2/4/2020 |
| 2020-20627 | 7 | Dario Castro Fernandez and Laura Elizabeth Castro | 2/4/2020 |
| 2020-20628 | 7 | Daisy Franco | 2/4/2020 |
| 2020-20629 | 7 | Victor Manuel Saavedra | 2/4/2020 |
| 2020-20630 | 7 | Crystal Caudillo | 2/4/2020 |
| 2020-20631 | 7 | Miguel Angel Sotelo and Araceli Sotelo | 2/4/2020 |
| 2020-20632 | 7 | Alicia Chavarrias Guzman | 2/4/2020 |
| 2020-20587 | 7 | Shawn Cole Martin | 2/3/2020 |
| 2020-20588 | 7 | Ronnie William Marengo | 2/3/2020 |
| 2020-20589 | 7 | Rufino Najera Uriza | 2/3/2020 |
| 2020-20590 | 7 | Hector Francisco Pereda and Laurie Jean Ramirez | 2/3/2020 |
| 2020-90086 | 7 | Jose I Paz and Yadira Jazmine Alvarez | 2/3/2020 |
| 2020-90087 | 7 | Jesus Ramirez and Lorena Ramirez | 2/3/2020 |
| 2020-90088 | 7 | Jaime Mejia Cortes | 2/3/2020 |

THOMAS O. GILLIS, SBN 40186
1006 H Street, Suite One
Modesto, CA  95354
Off:    209-575-1153
Fax:    866-750-5566

Attorney for Debtors
JUVENAL ZAMORANO

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In Re:                                      CASE NO. 15-20659

JUVENAL ZAMORANO

                                            Chapter 13

                Debtors.
_____/            JUDGE: Hon. Ronald H. Sargis

### SUBSTITUTION OF ATTORNEY

Debtor(s) herein, substitute(s):

**LATINO LAW, INC.**
1006 H Street
Modesto, CA
(209)575-1153
latinolawecf@yahoo.com

in place and stead of:

**THOMAS O. GILLIS**
1006 H Street
Modesto, CA
(209)518-8631

I consent to the substitution of attorney:

Dated:  January 12th, 2020                  */s/ Juvenal Zamorano*
                                            Debtor

See attorney signatures on page 2

# ADDENDUM H

I, Thomas O. Gillis, consent to the substitution:

**THOMAS O. GILLIS**

Dated: January 25, 2020                    */s/ Thomas O. Gillis*
                                           Thomas O. Gillis,
                                           Present Attorney for Debtor(s)

**LATINO LAW, INC**. accepts the substitution:

**LATINO LAW, INC.**

Dated: January 25, 2020                    */s/ Mark J. Hannon, SBN 107829*
                                           by Mark J. Hannon, Esq.
                                           as Shareholder

See attorney signatures on page 2

THOMAS O. GILLIS, SBN 40186
1006 H Street, Suite One
Modesto, CA  95354
Off:   209-575-1153
Fax:   866-750-5566

Attorney for Debtors
JUVENAL ZAMORANO

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In Re:                                     CASE NO. 15-20659

JUVENAL ZAMORANO

                                           Chapter 13

            Debtors.

_____/               JUDGE: Hon. Ronald H. Sargis

### SUBSTITUTION OF ATTORNEY

Debtor(s) herein, substitute(s):

**LATINO LAW, INC.**
1006 H Street
Modesto, CA
(209)575-1153
latinolawecf@yahoo.com

in place and stead of:

**THOMAS O. GILLIS**
1006 H Street
Modesto, CA
(209)518-8631

I consent to the substitution of attorney:


Dated:  January 12th, 2020              */s/ Juvenal Zamorano*
                                        Debtor


See attorney signatures on page 2

# ADDENDUM I

I, Thomas O. Gillis, consent to the substitution:

**THOMAS O. GILLIS**

Dated: January 25, 2020        */s/ Thomas O. Gillis*
                                         Thomas O. Gillis,
                                         Present Attorney for Debtor(s)

**LATINO LAW, INC**. accepts the substitution:

**LATINO LAW, INC.**

Dated: January 25, 2020        */s/ Mark J. Hannon, SBN 107829*
                                         by Mark J. Hannon, Esq.
                                         as Shareholder

MARK J. HANNON, SBN 107829
DBA **LATINO LAW, INC.**
1006 H STREET, SUITE 1
MODESTO, CALIFORNIA 95354
TEL (209)575-1153
FAX (866)750-5566
Attorney for Debtors
VICTOR CRUZ CHAVEZ and MONSERRAT OLVERA

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | CASE NO. 19-27416 |
| VICTOR CRUZ CHAVEZ and | |
| MONSERRAT OLVERA, | Chapter 13 |
| Debtors. | |
| _____/ | JUDGE: Hon. Ronald H. Sargis |

## <u>SUBSTITUTION OF ATTORNEY</u>

Debtor(s) herein, substitute(s):

<u>**MARK HANNON**</u>
DBA Latino Law, Inc.
1006 H Street, Suite 1
(209)575-1153
email: <u>Latinolawecf@yahoo.com</u>

in place and stead of:

<u>**THOMAS O. GILLIS**</u>
1006 H Street
Modesto, CA
(209)518-18631

I consent to the substitution of attorney:

Dated: ___1/31/20___                           _____
                                                                    Debtor

Dated: ___1/31/20___                           _____
                                                                    Co-Debtor

See attorney signatures on page 2

# ADDENDUM J

Page 1 of 2

I, Thomas O. Gillis, consent to the substitution:

**THOMAS O. GILLIS**

Dated: _____ 2/3/20

_____
Thomas O. Gillis,
Present Attorney for Debtor(s)

I, Mark Hannon, accept the substitution:

Dated: _____ 2/3/20

_____
Mark Hannon, Esq.

See attorney signatures on page 2

Page 2 of 2

**Thomas O. Gillis 40186;  40186 CA**                    *[Name; State Bar ID no.]*

**1006 H. Street Ste. 1**
**Modesto, CA 95354**                                            *[Address]*

**209-575-1153**                                                    *[Telephone]*

Attorney for Debtor(s)

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

**In re**                                          )
                                                   )
**Victor Cruz Chavez**                             )        **Case No.**    **2019-27416**
**Montserrat Olvera**                              )
                                                   )
                          **Debtor(s).**           )
_____           )

## RIGHTS AND RESPONSIBILITIES OF CHAPTER 13 DEBTORS AND THEIR ATTORNEYS

It is important for Debtors who file a chapter 13 bankruptcy case to understand their rights and responsibilities. It is also important for Debtors to know what their attorney's responsibilities are, and to understand the importance of communicating with their attorney to make the case successful. Debtors should also know that they may expect their attorney to perform certain services.

Unless otherwise ordered by the Court, an attorney retained to represent a Debtor in a bankruptcy case is responsible for representing the Debtor for all purposes in the case other than adversary proceedings. When appropriate, the attorney may apply to the court for compensation additional to the maximum initial fees set forth below.

In order to assure that Debtors and their attorneys understand their rights and responsibilities in the bankruptcy process, absent a contrary court order, Debtors and their attorneys agree as set forth below.

### BEFORE THE CASE IS FILED, THE DEBTOR AGREES TO:

1.   Discuss with the attorney the Debtor's objectives in filing the case.
2.   Timely provide the attorney with accurate information, financial and otherwise, and all documentation requested by the attorney.

### BEFORE THE CASE IS FILED, THE ATTORNEY AGREES TO:

1.   Meet with the Debtor to review the Debtor's debts, assets, liabilities, income, and expenses.
2.   Counsel the Debtor regarding the advisability of filing either a chapter 13 or a chapter 7 case, discuss both procedures with the Debtor, and answer the Debtor's questions.
3.   Timely prepare and file the Debtor's petition, plan, lists, statements, schedules, required documents and certificates.
4.   Review with the Debtor the completed petition, plan, lists, statements, schedules, required documents and certifications, as wall as all amendments thereto, whether filed with petition or later.
5.   Explain which payments will be made directly to creditors by the Debtor and which payments will be made through the Debtor's chapter 13 plan, with particular attention to mortgage and vehicle loan or lease payments.
6.   Explain to the Debtor how, when, and where to make the chapter 13 plan payments.

EDC 3-096  (Rev. 5/1/12)                    Page 1 of 3

# ADDENDUM K

7.      Explain to the Debtor how, when, and where to make post-petition mortgage and vehicle loan or lease payments.

8.      Explain to the Debtor that the attorney is being engaged to represent the Debtor for all purposes in the case, except adversary proceedings, pursuant to Local Bankruptcy Rule 2017-1(a)(1).

9.      Explain to the Debtor how and when the attorney's fees and chapter 13 trustee's fees are determined and paid, and provide an executed copy of this document to the Debtor.

10 .      Advise the Debtor of the necessity to maintain appropriate insurance including homeowner's insurance and liability, collision, and comprehensive insurance on vehicles securing loans or leases.

## AFTER THE CASE IS FILED, THE DEBTOR AGREES TO:

1.      Keep the chapter 13 trustee and attorney informed of the Debtor's current address and telephone number, and the Debtor's employment status.

2.      Inform the attorney of any change in the Debtor's marital status, the commencement of any child or spousal support obligation, or a change in any existing child support or spousal support obligation.

3.      Inform the attorney of any wage garnishments or liens or levies on assets that occur or continue after the filing of the case.

4.      Contact the attorney promptly if the Debtor loses his/her job, encounters new or unexpected financial problems, if the Debtor's income increases, or if the Debtor receives, or learns of the right to receive, money or other proceeds of an inheritance or legal action.

5.      Contact the attorney promptly if the Debtor is sued during the case, or if the Debtor commences a lawsuit or intends to settle any dispute.

6.      Inform the attorney if any tax refunds to which the Debtor is entitled are seized or not received when expected from the IRS or Franchise Tax Board.

7.      Contact the attorney before transferring, selling, encumbering, refinancing, or otherwise disposing of any personal or real property with a value of $1,000 or more.

8.      Contact the attorney before incurring new debt exceeding $1,000.

9.      Pay directly to the attorney any filing fees.

## AFTER THE CASE IS FILED, THE ATTORNEY AGREES TO:

1.      Advise the Debtor of the requirement to attend the §341(a) meeting of the creditors and instruct the Debtor as to the date, time and place of the meeting. In joint cases, inform the Debtor that both spouses must appear.

2.      Appear at the §341(a) meeting of creditors with the Debtor.

3.      Timely serve the Debtor's plan on the chapter 13 trustee.

4.      Timely provide to the chapter 13 trustee the *Domestic Support Obligation Checklist* (form EDC 3-088)*, Class 1 Checklist* (form EDC 3-086)*,* and *Authorization to Release Information to Trustee Regarding Secured Claims Being Paid By the Trustee* (form EDC 3-087) required by Local Bankruptcy Rule 3015-1(b)(6).

5.      Timely respond to objections to plan confirmation and, where necessary, prepare, file, and serve an amended plan.

6.      Prepare, file, and serve necessary modifications to the plan which may include suspending, lowering, or increasing plan payments.

7.      Prepare, file and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the Debtor.

8.      Object to improper or invalid claims, if necessary, based upon documentation provided by the Debtor.

EDC 3-096 (Rev. 5/1/12)                  Page 2 of 3

9.   Prepare and file a proof of claim, when appropriate, if a creditor fails to do so.

10.  Prepare, file, and serve motions to modify the plan after confirmation, when necessary.

11.  Prepare, file, and serve motions to buy, sell, or refinance property, when appropriate.

12.  Prepare, file, and serve any other motion that may be necessary to appropriately represent the Debtor in the case.

13.  Timely respond to all motions filed by the chapter 13 trustee, and represent the Debtor in response to other motions filed in the case including, but not limited to, motions for relief from stay.

14.  Where appropriate, prepare, file, serve, and set for hearing motions to avoid liens on real or personal property and motions to value the collateral of secured creditors as required by Local Bankruptcy Rule 3015-1(j).

15.  Provide such other legal services as are necessary for the administration of the Debtor's case before the Bankruptcy Court.


The fee charged for a chapter 13 bankruptcy is a matter for negotiation between the attorney and the Debtor. While Local Bankruptcy Rule 2016-1(c)(1) permits an initial fee of up to $4,000.00 in non-business cases, and $6,000.00 in business cases, lesser fees may be negotiated. These initial fees may be paid, in whole or in part, directly by the Debtor prior to the filing of the petition. To the extent not paid by the Debtor before the filing of the petition, the fees must be paid through the plan by the chapter 13 trustee.

Initial fees charged in this case are $ __4,000.00__ , and of this amount, $ __2,000.00__ was paid by the Debtor before the filing of the petition. While this initial fee should be sufficient to fully and fairly compensate counsel for all pre-confirmation services and most post-confirmation services rendered in the case, where substantial and unanticipated post-confirmation work is necessary, the attorney may request that the court approve additional fees. If additional fees are approved, they shall be paid through the plan by the chapter 13 trustee unless otherwise ordered. The attorney may not receive fees directly from the Debtor.


DATED:        __December 19, 2019__              __/s/ Victor Cruz Chavez__

                                                          **Victor Cruz Chavez**

                                                          Debtor


DATED:        __December 19, 2019__              __/s/ Montserrat Olvera__

                                                          **Montserrat Olvera**

                                                          Joint Debtor


DATED:        __December 19, 2019__              __/s/ Thomas O. Gillis__

                                                          **Thomas O. Gillis 40186**

                                                          Attorney for Debtor(s)


EDC 3-096  (Rev. 5/1/12)                        Page 3 of 3

1  THOMAS O. GILLIS, SBN 40186
2  ATTORNEY AT LAW
   1006 H STREET, SUITE 1
3  MODESTO, CALIFORNIA  95354
   TEL (209)575-1153
4

5  Attorney for Debtor
   RAMON PARA
6

7              UNITED STATES BANKRUPTCY COURT
8               EASTERN DISTRICT OF CALIFORNIA
                        SACRAMENTO
9

10  In Re:                          CASE NO. 19-26476

11      RAMON PARA,                  CHAPTER 13

12                                   TOG-15

13              Debtor.
    _____/         JUDGE: HON. Ronald H. Sargis
14

15

16      **ASSIGNMENT FOR PAYMENT OF ATTORNEY FEES AND CONTRACT**

17

18      The assignment between Thomas O. Gillis, Debtor's prior counsel, and Latino

19  Law, Inc., Debtor's proposed current counsel, is as follows:
20

21      1.  This case was filed on behalf of the Debtor(s) by attorney Thomas O. Gillis.

22      2.  In that all of the remainder legal work to be done to complete this case will be

23          done by Latino Law, Inc.  It is agreed that all remaining unpaid attorney fees in the

24
            amount of $6,000 shall be paid to Latino Law Inc., in place of Thomas O. Gillis.
25

26  ///

27  ///

28  ///

# ADDENDUM L

3.  For a valuable consideration, it is further agreed that Latino Law, Inc., without further compensation, will substitute in and represent all of the clients of Thomas O. Gillis who presently have confirmed plans but whose fees have been paid in full.

Assignment agreed to:

Dated: January 25, 2020                  */s/ Thomas O. Gillis*
                                         Thomas O. Gillis


Dated: January 25, 2020                  */s/ Mark J. Hannon*
                                         Mark J. Hannon, SBN  107829
                                         Latino Law, Inc.

1

2

3

4                **UNITED STATES BANKRUPTCY COURT**

5                 **EASTERN DISTRICT OF CALIFORNIA**

6

7

8

9

In re                                    )    Case No.  19-26476-E-13
10                                        )    Docket Control No. TOG-15
RAMON PARRA,                             )
11                                        )
                    Debtor.               )
12  _____)

13

14                **ORDER NOT GRANTING RELIEF PURSUANT TO**
                   **ASSIGNMENT OF ATTORNEYS' FEES DOCUMENT**

15          Thomas O. Gillis, the attorney of record for the Debtor in this Chapter 13 case, will be

16  suspended from the practice of law in the State of California for a period of two years commencing

17  February 1, 2020.  With that suspension, Mr. Gillis will not be able to serve as the attorney for the

18  Chapter 13 Debtor(s) in this case and will not be able to provide the necessary legal services for the

19  services the Chapter 13 Debtor(s) after February 1, 2020.  Mr. Gillis has pending before this court

20  more than six hundred (600) cases, the majority of which are Chapter 13 cases, four hundred and

21  seventy-nine (479), and the remainder being one hundred twenty-four (124) Chapter 7 cases.

22          The Chief Justice of the Supreme Court issued the *En Banc* Order imposing the two-year

23  suspension on November 1, 2019.[1]

24          The suspension was pursuant to a Stipulation between Mr. Gillis and the State Bar executed

25  on April 30, 2019 by Mr. Gillis.  In this April 30, 2019 signed Stipulation, Mr. Gillis agrees to the

26  two-year suspension from the practice of law.

27  _____

28          [1] In re *Thomas Oscar Gillis*, State Bar Court Nos 16-O-10780 (17-O-02624; 17-O-04790)
    ("State Bar Court Action").

                              **ADDENDUM M**

Following the April 2019 signing of the Stipulation for a two-year suspension from practicing law in California, Mr. Gillis filed the following Chapter 13 cases:

| Month | Number of Chapter 13 Cases Filed by Mr. Gillis |
|---|---|
| May 2019 | 10 |
| June 2019 | 4 |
| July 2019 | 11 |
| August 2019 | 10 |
| September 2019 | 5 |
| October 2019 | 29 |
| November 2019 | 21 |
| December 2019 | 3 |
| January 2020 | 1 |

With the recommendation before the court and the Chief Justice's Order for the two-year suspension being signed on November 1, 2019, the months of October and November showed a 100%+ up tick in filing of Chapter 13 cases by Mr. Gillis. With these cases running a period of at least three and up to five years, clearly Mr. Gillis did not expect to be providing any significant time providing legal services after the first of 2020. With those cases, it is possible that plans could have been confirmed before year-end, with Mr. Gillis having earned fees for services after that time.

It appears from these cases, that in the majority of them, Mr. Gillis was paid $2,000.00 in fees up front, with the balance to be paid through the monthly plan payments after confirmation. For the period of September through December 2019, when Mr. Gillis knew his suspension was imminent, this represents approximately $186,000.00 in monies received in those four months (93 Chapter 13 cases x $2,000.00 per case).

On November 27, 2019, Acting Presiding Judge Honn of the State Bar Court, issued an order in the State Court Bar Action extending the December 1, 2019 commencement of the two-year suspension to January 31, 2020. In issuing the extension, Presiding Judge Honn stated that a short extension would be granted in light of the non-opposition by the Office of the Chief Trial Counsel of the State Bar.

It has been represented to this court that attorney Mark J. Hannon would be substituting in on all of Mr. Gillis' open cases in this District. Several substitutions have been filed with this court in which the attorney to be substituted in as counsel of record is "Latino Law, Inc.," a California professional corporation. Mr. Hannon has signed the substitution forms as a "shareholder" of Latino Law, Inc. This court has issued an order denying such substitutions based upon the Local Bankruptcy Court Rules and the Local District Court Rules for the Eastern District of California that require an individual attorney be the attorney of record, not a corporation or other fictitious entity.[2]

**Assignment of Payment of Attorneys' Fees and Contract with Debtor Client**

In this bankruptcy case, Mr. Gillis has filed a document titled Assignment of Payment of Attorney Fees and Contract ("Fee Assignment Document").[3] The Fee Assignment Document states (identified by paragraph number of the document):

1.  The bankruptcy case was filed "on behalf of" the Debtor by attorney Thomas O. Gillis.

2.  Latino Law, Inc. will provide all of the future legal services to Debtor in this case required under Mr. Gillis' contract with Debtor, and will provide such services for whatever remaining unpaid fees there are for the future services to be provided.

3.  It is agreed that all remaining attorneys' fees to be paid in this case will be paid to Latino Law, Inc.

This Fee Assignment document is signed by Thomas O. Gillis and Mark J. Hannon (for the Latino Law, Inc. signature block, without designation of his status to sign for Latino Law, Inc.).

---

[2] E.D. Cal. Local Bankr. Rule 2017-1(c); E.D. Cal. Local District Court Rule 182.

[3] In addition to filing the Fee Assignment Document, Mr. Gillis lodged with the court a proposed order titled "Order Approving Assignment for Payment of Attorney Fees." The proposed order provides that:

> The Court approves the assignment which is attached. All attorney fees paid by the Trustee henceforth shall be paid to Latino Law, Inc. only. Counsel shall serve the Trustee with this Order.

Federal Rule of Bankruptcy Procedure 9013 requires that when an order of the court is sought by a party, such must be requested by motion or application (when the Bankruptcy Rules provide for the use of an application). No motion has been filed.

3

**Allowance of and Right to Be Paid Fees For**
**Representing a Chapter 13 Debtor**

Federal and state law govern fee agreements between Chapter 13 debtors and attorneys. 11 U.S.C. §§ 329(b), 330,526-528; Cal. Business & Prof. Code § 6148.  Among the subjects regulated are the amount of the fees charged, as well as how reasonableness of the fee is determined, and the relationship between attorneys and non-attorneys.

As pertinent here, three rules are central to the attorney-client relationship and the fee charged.     First, attorney-client fee agreements in Chapter 13 cases may not be assigned.  11 U.S.C. §§ 101(12A), 526(c)(1), 528(a)(1)(B) (governing fee disclosures of "debt relief agencies"); *La Rue v. Groezinger*, 84 Cal. 281, 285; Rest.2d Contracts § 318, Comment c (personal service contracts). Fee agreements in violation of the debt relief provisions of the bankruptcy code are void. 11 U.S.C. § 526(c)(1).

Second, fees charged by Chapter 13 attorneys must be reasonable in amount as compared to the service rendered.  11 U.S.C. § 330(a)(1), (4)(B) (debtor's counsel is allowed reasonable compensation "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services . . .").

The Eastern District of California has implemented § 330 by Local Bankruptcy Rule 2016-1(c), which allows debtor's counsel to either be paid (1) a flat fee of $4,000 or $6,000, without court approval; or (2) hourly or other fee computation methodology, with court approval.   In exchange for accepting the flat fee, debtor's counsel agrees to perform "all pre-confirmation services" and "most post-confirmation services."  Id.

Third, an attorney may not share fees, directly or indirectly, with a non-lawyer. Cal. Rule Prof. Conduct 5.4(a).  Attorneys seeking compensation must be licensed at the time services are performed.  *Z.A. v. San Bruno Park School District*, 165 F.3d 1273 (9th Cir. 1999); *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119 (1998). But fees actually earned by a member of the bar may be paid to that attorney, or his estate, after that attorney's disability or death. *Estate of Linnick*, 171 Cal.App.3d 752, 761 (1985) (agreement that firm would pay deceased attorney's estate for a reasonable period of time is unlawful fee splitting); Former Rule of Prof.

4

1   Conduct 1-320(A)(2).

2   **Denial of Assignment of Future Service Fees**

3      Thomas O. Gillis is counsel of record for the debtor in 481 Chapter 13 cases now pending in
4   the Eastern District of California. For every Chapter 13 pending before the Eastern District of
5   California, attorney Gillis has opted to be paid the flat fee as provided in Local Bankruptcy Rule
6   2016-1(c).

7      Those cases are at differing stages of completion, some with a plan filed but not confirmed
8   (61 cases) and others with a plan confirmed (420 cases).

9      Effective February 1, 2020, the State Bar of California has imposed a two-year suspension
10   on Thomas O. Gillis, attorney at law. That suspension precludes attorney Gillis from practicing law
11   in the Eastern District of California. E.D. Dist. Ct. L.R. 180(a); E.D. Bankr. Ct. LBR 1001-1(c). As
12   of February 1, 2020, Thomas O. Gillis will be deemed a non-lawyer for application of this order. As
13   such, Mr. Gillis has not earned, and cannot be paid amounts due for future legal services he cannot
14   provide to Debtor. The California licensed attorney who substitutes in as counsel for Debtor will be
15   entitled to seek, have allowed and paid such reasonable fees for the future services.

16      Therefore, upon review of the Fee Assignment Document, the Bankruptcy Code, Professional
17   Rules of Responsibility, California Law, and the Local Bankruptcy Rules of this Court, the two-year
18   suspension of Thomas O. Gillis from the practice of law in California, and good cause appearing;

19      **IT IS ORDERED** that the Fee Assignment Document does not effectuate or constitute a
20   transfer of any attorneys' fees or right to receive attorneys' fees in this bankruptcy case that relate to
21   any services to be provided to Debtor, and any relief pursuant thereto is denied without prejudice.

22      The Eastern District of California has commenced, but has not concluded, review of attorney
23   Gillis' Chapter 13 cases to ascertain the amount of the flat rate fee he earned prior to the effective date
24   of his suspension and whether some, or all, of the flat fees received by attorney Gillis have not yet
25   been earned.

26   **Dated:** February 06, 2020       **By the Court**

27

28

                           **Ronald H. Sargis, Judge**
                           **United States Bankruptcy Court**

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Thomas O. Gillis<br>1006 H Street, Ste. 1<br>Modesto, CA 95354 | Latino Law, Inc.<br>Attn: Mark J. Hannon, Esq.<br>1006 H Street<br>Modesto, CA 95354 |



**Secretary of State**
**Articles of Incorporation of a**
**Professional Corporation**

**ARTS-PC**

**FILED**
Secretary of State
State of California

**AUG 22 2019** 

**This Space For Office Use Only**

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee** — **$100.00**

**Copy Fees** — First page $1.00; each attachment page $0.50;
Certification Fee - $5.00

*Note:* Corporations may have to pay a minimum $800 tax to the California Franchise Tax Board each year. For more information, go to *https://www.ftb.ca.gov*.

**1. Corporate Name** (Contact the California state board or agency that controls your profession to find out if **your profession is authorized to be a corporation in California** and if there are any specific corporate name style rules. Go to *www.sos.ca.gov/business/be/name-availability* for general corporate name requirements and restrictions.)

The name of the professional corporation is   Latino Law, Inc.

**2. Business Addresses** (Enter the **complete** business addresses. Item 2a cannot be a P.O.Box or "in care of" an individual or entity.)

| a. Initial Street Address of Corporation - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1006 H Street | Modesto | Ca | 95354 |
| b. Initial Mailing Address of Corporation, **if different than Item 2a** | City (no abbreviations) | State | Zip Code |

**3. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 3a and 3b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| Thomas | Oscar | Gillis | | |
| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | | State | Zip Code |
| 1006 H Street | Modesto | | CA | 95354 |

**CORPORATION** – Complete Item 3c. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b

**4. Shares** (Enter the **number of shares** the corporation is authorized to issue. **Do not leave blank or enter zero (0).)**

This corporation is authorized to issue only one class of shares of stock.
The total number of shares which this corporation is authorized to issue is _____ 1000 _____ .

**5. Purpose Statement** (Contact the California state board or agency that controls your profession to find out if your profession is authorized to be a corporation in California. Go to *www.dca.ca.gov/about_dca/entities.shtml* for more information.)

The purpose of the corporation is to engage in the profession of _____ practicing law _____
and any other lawful activities (other than the banking or trust company business) not prohibited to a corporation engaging in such profession by applicable laws and regulations. This corporation is a **professional corporation** within the meaning of California Corporations Code section 13400 et seq.

**6. Read and Sign Below** (This form must be signed by each Incorporator. **See Instructions.** Do not include a title.)

| | |
|---|---|
| Signature | Thomas O. Gillis |
| | Type or Print Name |

ARTS-PC (REV 06/2019)

2019 California Secretary of State
bizfile.sos.ca.gov

# ADDENDUM N

# ADDENDUM O

## State of California
### Secretary of State

**S**

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME**

2. **CALIFORNIA CORPORATE NUMBER**

*This Space for Filing Use Only*

**No Change Statement**  (Not applicable if agent address of record is a P.O. Box address.  See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐    If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following**  (Do not abbreviate the name of the city.  Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4.   STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 5.   STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6.   MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

**Names and Complete Addresses of the Following Officers**  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7.   CHIEF EXECUTIVE OFFICER/ | | | | |
| 8.   SECRETARY | | | | |
| 9.   CHIEF FINANCIAL OFFICER/ | | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers**  (The corporation must have at least one director.  Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10.  NAME | | | | |
| 11.  NAME | | | | |
| 12.  NAME | | | | |

13.  NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14.  NAME OF AGENT FOR SERVICE OF PROCESS

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 15.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | | | |

**Type of Business**

16.  DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

17.  BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |
|---|---|---|---|
| | | | |

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

Thomas O. Gillis
1006 H Street, Ste. 1
Modesto, CA 95354

Request for Special Notice:

Office of the U.S. Trustee
Attn: Jason Blumberg, Esq.
501 I Street, Ste. 7-500
Sacramento, CA 95814

Office of the U.S. Trustee
Attn: Edmund Gee, Asst. U.S. Trustee
501 I Street, Ste. 7-500
Sacramento, CA 95814

Michael H. Meyer
Chapter 13 Trustee
Attn: Deanna K. Hazelton
7550 N. Palm, Ste. 204
Fresno, CA 93711

Russell D. Greer, Chapter 13 Trustee
P.O. Box 3051
Modesto, CA 95353-3051

David Cusick, Chapter 13 Trustee
P.O. Box 1858
Sacramento, CA 95812-1858